## SERGI et v STATE

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 6, 1934

K. H. Powell, Youngstown, for plaintiffs in error.

W. F. Yonkee, Assistant Prosecuting Attorney, Youngstown, for defendant in error.

## OPINION

By FARR, J.

The first error complained of is that the trial court erred in the admission of evidence offered by the State, over plaintiff in error's objection and exception. This relates to a schedule of the personal property that was offered in evidence with reference to the personal property destroyed. It is not believed that this was competent

evidence, for the reason that it is claimed that the property was owned by Concetta Sergi. However, it is not believed that this would be a sufficient ground for reversal. The fact remains that the property was destroyed and this schedule would not reflect upon the guilt or innocence of these parties, because there was no claim that they owned the property. If proof of a crime had failed this offer would still have been unimportant.

Next it is complained that Dittmar, the chief of the fire department of the city of Struthers, and Chief Callan, of the city of Youngstown fire department, and Michael Melillo, the State Deputy Fire Marshal, were permitted to testify as expert witnesses and to the effect that in their judgment this was a gasoline fire. It is not believed that this testimony was competent, for the reason that the parties do not qualify sufficiently as expert witnesses with reference to gasoline fires. However, upon the trial in the court below three witnesses testified that a rug or rugs were found under some debris in the cellar, which rugs had been soaked with gasoline. The witnesses called as experts described what they saw, and as well gave their conclusions from what they saw. This testimony, as the court views it, was incompetent as expert testimony. However, in view of the fact that they testified to finding or seeing rugs which they say were soaked with gasoline, and since they testified about what they saw about this fire, it is not believed that this testimony is sufficiently prejudicial to warrant a reversal of the judgment.

It is complained in this connection that the effect of admitting Swingley's evidence would tend to convict the accused of two crimes, as under §12433 GC, the general arson statute, and §12434 GC, which relates to burning property with intent to defraud the insurer, and this is also complained of in connection with the fact that it is said that the house did not take fire until after the explosion, and that is true. At the same time, it is not believed that such testimony would be sufficient to warrant a reversal. Any jury of ordinary intelligence would not understand that they were finding these parties guilty of two crimes, because it is clearly disclosed that through the trial it was observed that they were being tried for arson, so that that contention can not avail here.

Next, it is urged that the verdict and judgment is not sustained by the degree of proof required by law, and this is one of the important issues in this case. It

will be recalled that there is no direct testimony that these parties committed this offense. It may be observed in passing that the insurance policy of Consetta Sergi was received in evidence. This was incompetent, but it would be difficult to understand how it would prejudice anyone against these two accused persons, because the fact remained that the insurance policy was in her name. However, strictly speaking, this testimony would not be proper, but it is not believed that its admission is sufficient to reverse the judgment.

As to the weight of the evidence and by the degree required by law to convict, it is shown that the Sergis had lived in this house for about three years. Barillari was a nephew of the Sergis. He was paying some attention to one of the Sergi girls and was friendly with the family and has his dry cleaning establishment in the rear of the business place of Joseph Sergi. Thus they were somewhat connected socially and by relationship. It is asserted, and not denied, that the Sergis, during the three years, had not been away from the home over night prior to this time. It is shown that Joseph Sergi had called on the insurance company shortly before, probably the 29th of August, paid the insurance premium due, and then had later called and asked if everything was all right, or if everything was in proper shape, or words to that effect. It is also disclosed by the testimony that during the week immediately preceding the fire there had been considerable activity about the Sergi home. The Barillari truck had been out in front and neighbors saw articles being carried from the house to the truck. This was in the night season. There is no testimony going to show that any of these occurrences were in the day time. It is a little strange that if they were merely to transport these articles from the Sergi home, that they might have done at least a part of it during the day-time, but it is not disclosed that they did so. A dresser was found in the building after the fire and the dresser drawers were empty of any articles of property. Of course, in the instance of the truck being out in front in the night season, it might be suggested, and properly so, that Barillari's truck would be busy during the day time in his business.

Five coats belonging to the Sergi family, seemingly were not lost in the fire; it is said, however, by way of explanation, that they were in the dry cleaning establishment of Barillari in the rear of the store. Rather a suspicious circumstance is dis-

closed in the evidence in that a bank book was found near the street which had Joseph Barillari's name on or in it. It showed a deposit of $2,000. When Barillari was asked about it he denied the ownership of the book. Sergi denied ownership. Later Barillari said he had forgotten about it, but scarcely so. One would not be liable to forget a bank book that carried a deposit of $2,000. He explained after he remembered that it was his book, that he had deposited the money in that way because he wanted to avoid a contract without any subsequent damages being recovered against him.

All of these things taken together, the hour in the morning when the fire occurred, —Sergi said he had no enemies so far as he knew, and knew of no motive anyone would have in destroying his home; the witnesses called as to the gas and electric fittings said that they were all right and not defective. Now, on this state of the case, and on the other hand Sergi and Barillari denying all connection with the loss, the jury found the defendants guilty. It was a question of fact which was submitted to a jury of fellow citizens of the Sergis and Barillari, no doubt, but if these had been American folks, and charged in the same way, they would have been in the same way found guilty.

There is nothing to be said of an unkind nature against these people. It is a notable fact, whether noteworthy or not, that during this recent period of stress and depression there have been many incendiary fires. As an example, a rural insurance company not so far away, that used to require but a minimum of assessments to make good its losses, ran up to a large amount, showing that through rural communities, under the stress and the strain of the worst depression the world has ever known, men and women have sometimes forgotten themselves and resorted to doing things that they should not have done. It is not to be wondered at that the Surgis may have, under the same circumstances, and it is disclosed that they were being pressed by the Loan Company, may have done a mistaken act, but the fact remains that by legislative edict such things are proscribed in the State of Ohio.

On the up and up of this record, having in mind the facts and circumstances, it is not believed that the conclusion of the jury, which had a right to find the value of all this testimony, is so manifestly against the weight of the evidence as to warrant a reversal. No reversible error is found in this record and the judgment is affirmed.

Judgment affirmed.

LYNCH and ROBERTS, JJ, concur.