The State of Ohio, Appellee, *v.* Lakes, Appellant.*

*Motion to certify the record overruled (38803), July 1, 1964. Appeal dismissed, 176 Ohio St., 459.

214

(No. 287—Decided January 16, 1964.)

Mr. Elmer Spencer, prosecuting attorney, for appellee.
Messrs. Wilson, Wilson & Wilson, for appellant.

COLLIER, P. J. Phillip Lakes, the defendant, appellant herein, referred to herein as the defendant, was indicted by the grand jury of Adams County under an indictment containing two counts. The first count charged a violation of the arson statute, Section 2907.02, Revised Code, and charged that the defendant, on January 3, 1962, aided, procured and caused to be burned a certain dwelling house. The second count was under Section 2907.04, Revised Code, providing for a penalty for burning with intent to defraud an insurance company, and charged that the defendant, with intent to defraud the Great American Insurance Company of New York, aided and procured the burning of certain described personal property consisting of household goods, the property of Carmen Castell (name spelled in various forms), insured against loss or damage by fire unto the said Carmen Castell. The jury returned a verdict of not guilty as to the first count, but guilty as to the second count of the indictment. The motion for a new trial was overruled and the sentence of the court was imposed.

The defendant now seeks a reversal of the judgment and assigns errors relating to the admission of evidence, the refusal of the court to give two of five special instructions requested by

the defendant at the close of the evidence and before argument, the refusal of the court to withdraw from the consideration of the jury the entire testimony of Walter Copley, a witness for the state, that the verdict is inconsistent, and that the verdict is against the manifest weight of the evidence.

The state relied upon circumstantial evidence which consisted mostly of the testimony of deputy state fire marshals and village firemen describing the fire and revealing conditions discovered upon an investigation of the fire. The witness, Harold Justice, a state arson investigator, was permitted to testify as follows:

"The Court: Read the last question to him.

"Reporter: Would you tell us, Mr. Justice, what your investigation revealed concerning any accidental means by which this fire might be started? A. Revealed all possible ways of accidental fire was eliminated.

"Attorney for defendant: I move the answer be stricken and the jury instructed to disregard it.

"The Court: Overruled."

The fire occurred about three a. m. on January 3, 1962, and this witness made an on-the-scene investigation later the same day. Prior to the two years service in his present position, he had served twenty-one years as a fireman with the fire department of the city of Portsmouth, Ohio; he had graduated as an arson investigator and had been an instructor on this subject for the U. S. Navy. Prior to answering the allegedly objectionable question, he had given a detailed description of the interior of the burned house as he found it, including the location of the wiring, the stoves and heating apparatus, the location of a crater, an area where the floor had burned through some distance from any wiring or heating stove, and the concealment of a milk can containing kerosene in the attic. Unquestionably, this witness qualified as an expert witness. Some cases hold that opinion testimony of this nature is not admissible. *Carter* v. *State*, 4 Ohio App., 193. However, we are inclined to agree with the decision of the Court of Appeals of the Seventh Appellate District in *Sergi* v. *State*, 17 Ohio Law Abs., 190, involving a similar situation wherein it was held (paragraph two of the headnotes):

"Although opinion testimony that a fire was a gasoline

fire should not be permitted to be given by officials not qualified sufficiently as expert witnesses with reference to such fires, the admission of such testimony is not sufficiently prejudicial to warrant a reversal when they testified that they found a rug under debris in the cellar soaked with gasoline and testified as to what they saw.''

And, furthermore, it will be observed that the witness in the instant case did not testify as to any specific cause of the fire as in the *Sergi case*. Our opinion is that if this testimony was incompetent, it was not of such a prejudicial nature as to require a reversal.

At the close of the evidence for the state, the defendant demurred to the evidence, and, upon the overruling of the demurrer, the defendant rested his case without offering any evidence. On request of the defendant to give five special instructions before argument, the court gave three of the instructions and refused to give two. The first instruction refused, in substance, stated that before the jury could find the defendant guilty on circumstantial evidence, the facts, when taken together, must be so convincing as to be irreconcilable with the claim of innocence and admit of no other hypothesis than the guilt of the accused. The second charge which the court refused to give reads:

''I charge you, members of the jury, that it is a principle of law that one presumption or inference can not be deduced from or predicated upon another presumption or inference, but each presumption must be predicated upon the facts supported by the evidence.''

It has long been the established rule in Ohio that, in the trial of a criminal case, it is not mandatory upon a trial court to give any instructions to the jury before argument, but, by virtue of Section 2945.10 (E), Revised Code, if requested special instructions reduced to writing are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge. *Wertenberger* v. *State*, 99 Ohio St., 353; *Grossweiler* v. *State*, 113 Ohio St., 46; *State* v. *Barron*, 170 Ohio St., 267. The substance of both these requested instructions was completely embraced in the court's general charge. The defendant was denied no constitutional or statutory right in the court's refusal to give these requested instructions.

Defendant next contends that the entire testimony of the witness, Walter Copley, should have been withdrawn from consideration of the jury for the reason that his testimony is so conflicting with prior statements and that he did not understand the nature of an oath. After carefully examining the testimony of the witness, our conclusion is that the trial court properly permitted the jury to determine his credibility. It is true that his statements of facts are contradictory and at times he appeared to be confused, but, if any of his testimony is to be believed, this condition was brought about by undue and improper influence of the defendant upon this illiterate, former employee of the defendant. This witness was not so lacking in intelligence that he could not and did not remember and relate what he had seen and heard, in a coherent manner. It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.

The defendant contends that the verdict is repugnant and inconsistent for the reason he was found not guilty under the first count of the indictment, which charged him with intentionally aiding, procuring and causing a dwelling house to be burned, and guilty under the second count, which charged him with unlawfully and willfully aiding, procuring and burning certain personal property in such dwelling house with intent to defraud an insurance company. Defendant claims that the verdict should have been guilty or not guilty under both counts; that a verdict of guilty under one and not guilty under the other is illogical, repugnant and inconsistent and should be set aside.

The law of Ohio on this question was determined in the early case of *Griffin* v. *State*, 18 Ohio St., 438, which holds: "A verdict will not be set aside as inconsistent, or uncertain, because it finds differently as to counts in which there is no material difference." This rule has been followed consistently. *Tabler* v. *State*, 34 Ohio St., 127; *Browning* v. *State*, 120 Ohio St., 62; *State* v. *McNicol*, 143 Ohio St., 39; 16 Ohio Jurisprudence (2d), 23, Section 645. The theory is that each count charges a complete offense; that the separate counts of an indictment are not dependent, but are, and necessarily must be, each complete in itself; that in determining the effect of a verdict that responds by designation to a given count, the other

counts will be ignored; and that an inconsistency does not arise, unless it arises out of inconsistent responses to the same count. *Browning* v. *State, supra.*

The final question is whether the verdict is supported by sufficient evidence. The dwelling house that was burned on January 3, 1962, was located in the village of Peebles, Adams County, Ohio, and was owned by Carmen Castell who acquired title thereto by deed executed by the defendant, Phillip Lakes, as grantor, on March 8, 1956. Prior to December 18, 1961, the house had been occupied by a family by the name of Massey. On that date the Masseys moved out of the house, and a few days later Carmen Castell moved some used furniture into the house, resided there a short time, but was not occupying the house the night of the fire, on January 3, 1962. When Carmen Castell left the premises and her whereabouts at the time of the fire were not shown by the evidence.

The testimony of the members of the village fire department, who extinguished the fire before the house was completely burned, as to the nature of the fire, the seat and crater of the fire and the "flashbacks" of the fire which required repeated efforts by the firemen to stop the burning, when considered with the testimony of the arson investigator, and laboratory technicians of the State Bureau of Criminal Indentification and Investigation, showing the presence of kerosene in a milk can concealed in the attic connected with inflammable material, clearly justifies the inference that the fire was of incendiary origin; that a crime had been committed.

The evidence, as it relates to the defendant's connection with the commission of the crime, may be summarized as follows: That on March 1, 1961, the defendant, on behalf of Carmen Castell, made application to H. M. McCreight, an insurance agent, for a policy of insurance against loss by fire on the dwelling house that was burned; that a policy in the sum of $10,000 was issued on defendant's application; that the defendant paid the premium on the policy with currency; and that the policy was delivered to the defendant. On December 18, 1961, the amount of insurance on the house was increased in the sum of $7,500, and on December 27, 1961, a policy in the sum of $5,000 was issued by the same agent, representing the same company,

on the household goods in the dwelling house upon the application of Carman Castell.

One witness testified that the value of the house was $3,500 and another fixed the value at not to exceed five thousand dollars. The value of the furniture was fixed at a small fraction of the amount for which it was insured. The defendant was seen on the premises, where the house burned, on several occasions before and after the fire and took some part in moving the furniture into the house. The witness, Copley, who assisted in loading some of the furniture from a corn crib some distance away in an adjoining county into a truck to be moved into the house which was burned, testified as follows:

"Q. What did you overhear in a conversation there if anything between Mr. Lakes and Mrs. Castell concerning this furniture Mr. Copley?

"Atty for defendant: I object he said he never heard Phil Lakes say anything.

"The Court: Overruled.

"A. Yes, after we had loaded the one refrigerator on there I heard them quarreling or arguing in there and he said get the God Damn stuff over there and after its burned up it can't be identified. We went on then and loaded the big freezer.

"Q. Who said that about it couldn't be identified if burned up? A. Mr. Lakes."

The same witness described the furniture as old, scarred, broken and out of repair.

The evidence also establishes the fact that the defendant claimed to own the property in question. On the same day the fire occurred the defendant appeared on the premises and when he was refused permission to go into the house by Harold Justice, an arson investigator, the defendant became very angry, abusive and threatening, as shown by this testimony:

"Q. Mr. Justice the question is what was said and what was done so answer it that way. A. I'll try to there are words I don't use.

"Q. You will half to.

"The Court: Go ahead.

"A. With your permission I advised him this was under investigation he turned and chased me and I was standing prob-

ably 15 feet away and he said no son of a bitch would stop him from going on his own property."

In the same altercation between the arson investigator and the defendant, the defendant is quoted as saying:

"Q. Now then Mr. Justice before this did Mr. Phil Lakes ever mention anything about a job? A. Yes sir.

"Q. What did he say about this? A. He was standing—

"Atty for defendant: I object.

"A. On the sidewalk near the front steps of this dwelling in a slightly bent position with his right arm in a gesture—

"Atty for state: I'll withdraw the question.

"Q. I would like to know what Mr. Lakes done and said, what occurred concerning this business about a job?

"Atty for defendant: I object.

"The Court: Overruled.

"A. In a bent position—

"Atty for defendant: I move that be stricken.

"The Court: Overruled.

"A. And using his right arm he waived it across the front of his body and said why didn't you bring that curly headed son of a bitch from up state and look at this $24,000.00 job of mine is what he said.

"Q. What did he gesture to if anything at that time?

"Atty for defendant: I object.

"The Court: Overruled.

"A. The fire loss."

This evidence is uncontroverted; the defendant did not testify in his own behalf or offer any evidence in his defense to deny, clarify or explain the accusations against him.

In a criminal action, if there is any substantial evidence that a crime has been committed by a defendant, it becomes a question for the jury to determine his guilt or innocence. *State* v. *Axe*, 118 Ohio St., 514; *State* v. *Brown*, 102 Ohio App., 113; 15 Ohio Jurisprudence (2d), 421, Section 225.

The defendant contends that the rule of an inference on an inference was violated; that the jury could not reach a verdict of guilty in any other manner. As we view the record, that rule does not apply. The undisputed evidence in this case establishes a series of separate facts and circumstances, none of

which is based on the others. The Supreme Court, in *Hurt* v. *Charles J. Rogers Transport Co.*, 164 Ohio St., 329, has held:

"3. It is permissible for a jury to draw several conclusions or presumptions of fact from the same set of facts and equally permissible for a jury to use a series of facts or circumstances as a basis for ultimate findings or inferences."

Our conclusion is that the evidence was sufficient to warrant the jury in finding the defendant guilty of aiding and procuring the commission of the crime charged in the second count of the indictment. We find there is no reversible error in the record and that the conclusion of the jury is not so manifestly against the weight of the evidence as to warrant a reversal. The judgment must be, and hereby is, affirmed.

*Judgment affirmed.*

YOUNGER and BROWN, JJ., concur.

YOUNGER, J., of the Third Appellate District, sitting by designation in the Fourth Appellate District.