DECISION
Defendant-appellant, Thosha D. Allison, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding appellant guilty of one count of aggravated robbery, one count of robbery, one count of aggravated burglary, and one count of kidnapping, all with firearm specifications.
A fifteen-count indictment was filed on September 1, 1999, charging appellant with various counts arising from two separate robberies, that of a Dairy Mart convenience store on August 25, 1999, and of a Donatos pizza shop on August 19, 1999. At appellant's first trial on these charges, the jury found him not guilty of all charges arising out of the Dairy Mart robbery, but found him guilty of five counts arising out of the Donatos robbery. Upon appeal from this initial trial, this court reversed and remanded for a new trial, finding that the trial court had improperly barred appellant from removing his shirt in court in order to demonstrate that his physical characteristics did not conform with descriptions given by the eyewitnesses who testified at trial.
Upon retrial after remand, the principal issue raised by the defense was again whether appellant had been conclusively identified by witnesses as the perpetrator of the robbery. The state's evidence consisted of a surveillance system videotape from the Donatos pizza shop, the testimony of three Donatos' employees, and a neighboring resident.
Gloria Woods testified that she was the acting manager at the Donatos on the evening in question. At approximately 10:25 p.m., an individual she later identified as appellant entered the Donatos shop through the side door which was normally kept locked. The individual was wearing white shorts, no shirt, and had a white hand towel partially covering his head. Woods could nonetheless see his face. When Woods told him that he was not permitted to be in that part of the building, appellant produced a gun which he pointed in Woods' face. She described it as a small-caliber revolver, steel gray in color with a short barrel. The gun was no more than half a foot from her face, and looked real to her.
Appellant told Woods to show him where the safe was located, and Woods protested that she had no access to it. Appellant then put his hands on Woods and forced her into the store office, holding the gun to her head. From there, appellant forced Woods to the front part of the store, where Woods demonstrated that she had no access to the safe. Appellant then confronted a delivery driver who was returning to the store, and took the driver's money. Woods also provided appellant with money turned in earlier by other delivery drivers. She stated she estimated the robbery incident lasted for almost half an hour.
Woods positively identified appellant in a photo array presented by police and identified appellant in open court as the robber. She also identified a videotape of the Donatos camera surveillance system, and approximately four minutes of the videotape was played for the jury.
Beatrice Kindrix testified that she was the delivery driver who returned while the robbery was in progress. Appellant snatched the money from her hand and showed her a gun, which looked real. Appellant ordered Kindrix to come to the front of the store with Woods, and made Kindrix stand by as Woods attempted to open the safe. Kindrix also identified appellant from a photo array and in court as the robber.
Charles Lunsford testified that he was employed making pizzas at Donatos on the night in question. Appellant held a gun to the head of various employees and led Woods to the safe. Appellant then pointed the gun at Lunsford and told him to get on the ground along with the other employees. Lunsford described the gun as a black .38 caliber. It looked to Lunsford like a real gun. Lunsford observed appellant take Woods to the front of the store, and heard appellant threaten to kill her if she could not get the safe open. Lunsford initially identified appellant in a photo array with eighty percent certainty. He was later shown a second array in which he positively identified appellant. Lunsford also identified appellant in court as the robber. Lunsford estimated that the robbery incident lasted three to five minutes.
Jason Goss testified that he lived with his mother in the neighborhood of the Donatos pizza shop. On the night of the robbery, his mother called his attention to a red Mercury Cougar parked alongside their residence. Goss saw a man standing at the back of the car place a towel over his head and then head towards the Donatos. Goss called 9-1-1 and reported the license plate number of the car. By Goss' estimate, it was two or three minutes before the man returned to the car and the police arrived a short time later.
Detective Brenda Lieberman, of the Columbus Division of Police, testified that she investigated the Donatos robbery and ran the license plate number provided by Jason Goss, finding the car registered to appellant. Based on this information, Detective Lieberman prepared photo arrays, including appellant's photograph, which were shown to the witnesses.
The defense presented the testimony of Dewanda Allison, appellant's sister. She stated that appellant has two tattoos and various scars on his torso and arms. This conflicted with testimony of some of the prosecution's witnesses, who noticed no tattoos or scars on the robber. The defense also presented as evidence pay stubs from two employers to demonstrate that appellant was working on the date of the robbery.
Appellant was again found guilty of aggravated robbery, robbery, kidnapping with respect to Gloria Woods, and aggravated burglary of the Donatos pizza shop. The robbery conviction merged with the aggravated robbery conviction, and appellant was sentenced to nine years incarceration on the three remaining counts, to be served concurrently. The firearm specifications merged and the court imposed a single additional three year term of actual incarceration to be served consecutively.
Appellant has timely appealed and brings the following two assignments of error in his brief filed by counsel:
 I. Appellant's convictions are against the manifest weight of the evidence.
 II. The trial court committed plain error in finding appellant guilty of the firearm specifications pursuant to R.C. 2941.145, when there was insufficient evidence that the alleged weapon was operable.
Appellant has filed an additional pro se brief bringing the following assignment of error:
 THERE WAS INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT-APPELLANT OF THE UNDERLYING CHARGES, THAT WERE INDICATED WITHIN THE INDICTMENT.
Appellant's three assignments of error all address either the manifest weight or sufficiency of the evidence adduced at trial. The Ohio Supreme Court in State v. Thompkins (1997), 78 Ohio St.3d 380, set forth the following standard for a court addressing an appeal from a criminal conviction based upon a claim that the verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. When reviewing a conviction on manifest weight of the evidence, we do not construe the evidence most strongly in favor of the state. Instead, we must engage in a limited weighing of the evidence to determine whether there is sufficient, competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
In contrast, the legal concept of sufficiency of the evidence to support a conviction involves a different determination. Thompkins, supra, at 386. "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., quoting Black's Law Dictionary (6 Ed. 1990) 1433. Thus, a determination as to whether the evidence is legally sufficient to sustain the verdict is a question of law. Thompkins, at 386. The relevant inquiry upon a review of the sufficiency of the evidence is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 99 S.Ct. 2781, 2789. A reversal based on insufficient evidence has the same effect as a not guilty verdict, and thus precludes retrial, because such a determination "means that no rational factfinder could have voted to convict the defendant." Tibbs v. Florida (1982), 102 S.Ct. 2211, 2218.
Appellant's first assignment of error in his brief filed by counsel, and the sole assignment of error in his pro se brief, address the evidence supporting his identification as the robber. Appellant asserts that reasonable doubt exists as to whether appellant was the robber because of discrepancies in the testimony of witnesses as they described the robber's height and weight. The descriptions varied between 5'5" and 6'2" in height and one hundred twenty-five to two hundred thirty-five pounds in weight. Appellant also points out that he was described by his sister as having a small tattoo on his chest at the time of the robbery and visible scars on his back from a motorcycle accident, neither of which were noticed by witnesses. Appellant further points to the fact that Donatos employee Charles Lunsford admitted that the robber he identified in the first photo array presented to him was not in the second photo array, and that Beatrice Kindrix did not select appellant from a photo array until nine days after the robbery, after she had been provided with other descriptions of the robber at a management meeting.
A defendant is not entitled to a reversal on manifest weight grounds merely because the evidence presented at trial was inconsistent in some respects. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, * * * such inconsistencies do not render [a] defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95AP-1236, unreported, citing State v. DeHass (1967),10 Ohio St.2d 230. "It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness." State v. Lakes (1964),120 Ohio App. 213, 217. See, also, State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, unreported. In sum, therefore, it is the province of the jury to believe all, part, or none of a witnesses testimony and, based upon its assessment of the relative credibility of all testimony, draw its own factual conclusions. State v. Antill (1964),176 Ohio St. 67.
In the present case, the discrepancies in testimony pointed to by appellant, even in the aggregate, do not begin to approach the threshold necessary to find that the verdict was against the manifest weight of the evidence. The discrepancies are not unusual when eliciting the recollections of witnesses who made their observations while under considerable stress, being held at gunpoint as victims in an armed robbery. None of the variations in characteristics described by the witnesses positively excluded appellant as the robber based on gross physical characteristics, and variations in height and weight merely demonstrate that, for these witnesses, identification of appellant hinged more on his facial characteristics which they observed with certainty than with his physical proportions. All the witnesses positively identified appellant in open court, and Gloria Woods, who had the most extended opportunity to view the robber, was correspondingly most definite in her identification of appellant. All of the eyewitness testimony, buttressed by the testimony placing appellant's car at the scene at the precise time of the robbery, amply preclude any determination on appeal that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed," pursuant to Thompkins, supra, at 387. Appellant's first assignment of error in his brief filed by counsel is accordingly overruled. The assign-ment of error in appellant's pro se brief, which raises the corresponding issues under a sufficiency standard, is likewise overruled.
Appellant's second assignment of error asserts that insufficient evidence of operability of the firearm was presented to sustain the firearm specification.
 A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In deter-mining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense [as required by statute], the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. * * *
Thompkins, supra, at paragraph one of the syllabus. In accord with the present facts, "'[o]perability' can be proven by all the surrounding facts and circumstances, including an implicit threat to use the gun evidenced by pointing the gun at the victim and ordering the victim to perform some act." State v. Hicks (May 19, 2000), Montgomery App. No. 17730, unreported. In the present case, appellant pointed the gun at the employees of the establishment he intended to rob, and ordered them to move about the premises, lie down, and turn over their cash. This is an amply sufficient implicit threat under Thompkins to warrant a finding that the gun was operable and the firearm specification accordingly had been proven. In addition, Lunsford testified that appellant threatened to kill Gloria Woods if she could not open the safe. This explicit threat alone is more than sufficient evidence of operability. State v. Galloway (Mar. 30, 2000), Franklin App. No. 99AP-826, unreported. We accordingly find that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the firearm specification proven beyond a reasonable doubt, and appellant's second assignment of error is accordingly overruled.
In accordance with the foregoing, appellant's first and second assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
TYACK, P.J., and LAZARUS, J., concur.