JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Defendant-appellant Clifford Estill was charged with one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and one count of robbery in violation of R.C. 2911.02(A)(2). The aggravated-robbery charge included gun specifications. A jury found Estill guilty of robbery, but acquitted him of aggravated robbery and the accompanying gun specifications. The trial court sentenced Estill to six years in prison. Estill now appeals his conviction and sentence. He raises three assignments of error for our review.
We begin our analysis by addressing Estill's second assignment of error, where he challenges the weight and sufficiency of the evidence to sustain his robbery conviction. Estill argues that the state failed to present sufficient evidence to convict him as a principal offender or as an aider and abettor in Corey Stone's robbery.
In order to convict Estill as a principal offender, the state had to prove that Estill, in attempting or committing a theft offense, inflicted or attempted to inflict physical harm on another or used or threatened the immediate use of force against Stone.[1] In order to convict Estill as an aider and abettor, the state had to show that Estill participated in the robbery.[2] Such "[p]articipation in criminal intent may be inferred from criminal presence, companionship, and conduct before and after the offense is committed."[3]
Our review of the record reveals that the state's evidence, when viewed in the light most favorable to the prosecution, could have convinced a reasonable trier of fact that Estill had stolen Stone's car by threat of force.[4] Stone testified that he was approached by David Fountain about purchasing marijuana. While the parties dispute whether Stone was offering to sell the marijuana to Fountain or merely offering to provide him with the phone number of a dealer, Fountain followed Stone to his home. Once at his home, Stone got out of his car, clipped his car keys to a chain he was wearing around his neck, and started talking with Fountain. Stone had noticed in the meantime that a second car had followed them and was parked behind Fountain's car.
Five to ten minutes into their conversation, Fountain pulled a gun on Stone. Moments later, Ed Belton, a juvenile, and Marlon Cephas joined Fountain. They were also pointing guns at Stone. Stone testified that while Fountain, Cephas, and Belton robbed him of his personal belongings at gunpoint, an unarmed man took his car keys, which were hanging around his neck. Although Stone could not identify the man who took the keys, he did see that man getting into, starting, and driving away with his car. Estill was arrested five hours later driving Stone's car.
In his initial statement to police, Estill denied any knowledge of the robbery. He told police that he had obtained the car from a friend named Cory, but that he had heard Cephas bragging about the robbery. In a subsequent statement to police, however, Estill admitted that he had driven to the scene of the robbery with Cephas, but maintained that he had no knowledge that a robbery was about to take place. Estill told police that he did not know Cephas was carrying a gun, and that he had panicked and taken Stone's car because he was scared and wanted to get away from the robbery. Estill told police that Stone had left the keys in his car. Cephas also testified that Estill did not have any advance knowledge of the robbery; that Estill did not have a weapon, and that Estill never made any contact with Stone during the robbery. Cephas testified that while he, Fountain, and Belton were robbing Stone, he saw Estill get out of his car and drive off in Stone's car. Stone's testimony, when combined with Estill's own statements to the police, provided sufficient evidence, if believed, to convict Estill of robbery.
Moreover, we are unconvinced that the jury improperly weighed the evidence.[5] The jury apparently found Stone's account of the robbery to be more credible than that offered by Cephas and Estill. Because the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact, we cannot say that, as a matter of law, the jury improperly weighed the evidence.[6] We, therefore, hold that the jury did not lose its way in finding Estill guilty of robbery. Accordingly, we overrule his second assignment of error.
In his first assignment of error, Estill argues the trial court erred in admitting into evidence, as a prior consistent statement, Detective Christopher Bihl's testimony regarding statements Stone had made to him about the robbery.
Evid.R. 801(D)(1)(b) provides that a statement is not hearsay if "the declarant testifies at a trial or hearing and is subject to cross-examination concerning the statement, and the statement * * * is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."
We have reviewed the record and agree that Detective Bihl's testimony was improper. Detective Bihl testified after Stone. At no point during the cross-examination of Stone did defense counsel suggest or imply that Stone's testimony was the result of fabrication or undue influence. Thus, Evid.R. 801(D)(1)(b) could not have provided a basis for admitting Bihl's statements.[7] Because Bihl's testimony was hearsay and did not fit within any of the hearsay exceptions, the trial court erred in admitting it.
However, we cannot say the trial court's admission of Bihl's hearsay testimony, when viewed in the entirety of the evidentiary record before us, was prejudicial to Estill's case.[8] Bihl's testimony was merely cumulative of other evidence that had been presented during the trial. We, therefore, conclude that the trial court's admission of Bihl's testimony was harmless error.[9] As a result, we overrule the first assignment of error.
In his third assignment of error, Estill argues that the trial court erred as a matter of law by improperly sentencing him. Estill argues that the trial court failed to make the appropriate findings on the record to impose more than the minimum prison term.
Our review of the record reveals that the trial court made the necessary findings to impose more than the minimum prison term. The trial court orally stated that Estill had been adjudged delinquent; that he had misdemeanor convictions and two felony convictions and that he had been out on bond for a drug-trafficking charge at the time of the robbery. The trial court further found that Estill was not amenable to community control and that imposing the minimum prison term would demean the seriousness of the crime and would not adequately protect the public. Because the trial court made the appropriate findings at the sentencing hearing to impose more than the minimum prison term, and because the record supports those findings, we cannot say that Estill's sentence was contrary to law.
Next, Estill argues that even if the trial court made the appropriate findings to impose more than the minimum prison term under the sentencing guidelines, he should have only been sentenced to the minimum prison term because of our decision in State v. Montgomery.[10] Our review of the record reveals that the trial court's decision to impose more than the minimum sentence in this case was expressly based on Estill's criminal history. Thus, his sentence was proper under Blakely's prior-conviction exception.[11] Any other findings the trial court made that were not proper under Blakely were harmless error.[12]
Estill additionally contends that he received a harsher sentence than his co-defendants because he chose to take his case to trial instead of pleading guilty. But Estill has cited no evidence or legal authority to support his claims, nor have we found any evidence in the record to support his claims. Consequently, we overrule his third assignment of error. Having found no merit to any of Estill's arguments, we affirm the judgment of the trial court.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Sundermann and Hendon JJ.
[1] See R.C. 2911.02(A)(2).
[2] See State v. Moore (1985), 16 Ohio St.3d 30, 32-33, 476 N.E.2d 355.
[3] State v. Johnson, 93 Ohio St.3d 240, 245, 2001-Ohio-1336,754 N.E.2d 796, syllabus.
[4] See, e.g., State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668.
[5] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[6] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; see, also, State v. Lakes (1964),120 Ohio App. 213, 217, 201 N.E.2d 809 (holding that "it is the province of the jury to determine where the truth lies from conflicting statements, not only of different witnesses, but by the same witness").
[7] See State v. Fears, 86 Ohio St.3d 329, 339, 1999-Ohio-111,715 N.E.2d 136.
[8] Crim.R. 52(A); App.R. 12(B).
[9] Fears, supra, at 339.
[10] 159 Ohio App.3d 752, 2005-Ohio-1018, 825 N.E.2d 250.
[11] State v. Lowery, 160 Ohio App.3d 138, 2005-Ohio-1181,826 N.E.2d 340; State v. McIntosh, 160 Ohio App.3d 544, 2005-Ohio-1760,828 N.E.2d 138.
[12] Lowery, supra; McIntosh, supra.