OPINION
{¶ 1} Defendant-appellant, Earnest Hall ("appellant") was indicted on two counts of felonious assault in violation of R.C.2903.11, felonies of the second degree, each with a three-year firearm specification under R.C. 2941.145. A jury found appellant guilty on Count One and the accompanying specification, and found him not guilty on Count Two.
 {¶ 2} The following relevant facts were adduced at trial. On August 7, 2003, Lamonte Richardson ("Richardson"), a student and football player at Linden McKinley High School, was living with his aunt, Latonya Haley ("Haley") at her home located at 1133 East 18th Avenue in Columbus. On that date he accompanied Haley to the home of Deirdre Garrett ("Garrett"). Garrett's home was located at 1115 East 18th Avenue. Appellant, who is the father of Garrett's children, was present. According to Richardson, appellant came out onto Garrett's porch and was "getting smart" with Haley. Richardson verbally defended his aunt by telling appellant "he didn't have anything to do with it, so why he got to call my aunt B's, * * *." Richardson testified that appellant told him that he "got it coming."
 {¶ 3} Three days later, on August 10, 2003, Richardson went to football practice, which ended at approximately 10:30 a.m. After practice Richardson showered and changed clothes. He left his house between 11:00 a.m. and noon to go to the home of friend, Paul, which was located at 1109 E. 18th Avenue. While on the porch with Paul, Richardson observed two little boys fighting. One of the children was Garrett's child. The other child had a stick, which Paul took from him. When Garrett approached Richardson and Paul to ask them what happened between the children, Richardson told her that her son was fighting with another child who had tried to strike him with a stick.
 {¶ 4} Richardson testified that he watched appellant leave Garrett's home, and walk down the sidewalk to the porch where Richardson was sitting. Appellant pulled a gun from his waistband and approached Richardson on the porch saying, "I guess my son's name is still in your mouth." As Richardson stood up, appellant struck him in the head with his gun. Then, Richardson heard one gunshot and was struck by a bullet in his left leg. Appellant then ran off the porch and behind one of the houses next door.
 {¶ 5} Richardson described his injuries as a wound to the head and a gunshot wound to his leg that prevented him from playing football that season. He described the clothing that appellant was wearing at the time of the shooting as baby blue basketball shorts and an untucked shirt. He described the gun as a revolver.
 {¶ 6} Richardson testified that when Columbus Police Detective Belle Hillman presented him with a photo array, he identified appellant as the person who approached him with a gun and shot him. Although he testified that there were several people in the neighborhood at the time, Richardson was unable to identify any other individual who might have seen the incident.
 {¶ 7} Marcelleus Bolton ("Bolton"), then an 11-year-old Eastmoor Middle student, lived at 1111 East 18th Avenue, next door to the house where Richardson was visiting his friend Paul on August 10, 2003. Bolton testified that on that date he was walking down East 18th Avenue when he observed a fight between two young boys, named "Little E" and "Tyreek". After the fight, he saw Little E and Little E's parents come down the street. He identified Little E's mother as "Miss D" (Garrett), and appellant as Little E's father. Appellant approached Richardson, who was sitting on a stoop. Appellant pulled out a gun and hit Richardson in the head with it. Bolton was near Richardson when he heard one gunshot. After hearing the gunshot, Bolton stated he felt a burn in the side of his chest. Bolton described the gun as being like a "cowboy gun" and later identified it as a revolver.
 {¶ 8} Bolton testified that it was approximately 90 seconds between the time appellant struck Richardson in the head with the gun and the time Bolton heard the gunshot. Bolton has two scars as a result of the shooting and believes them to have been caused by fragments from the gunshot. When Detective Hillman showed Bolton a photo array, Bolton identified appellant as the shooter.
 {¶ 9} Marjorie Shotwell ("Shotwell") testified that August 10, 2003 was a Sunday. She testified that on that date she was at her home at 1111 East 18th Avenue, preparing Sunday dinner at approximately noon, but no later than 2 or 3 o'clock p.m., when she heard a gunshot. She later learned that her son, Bolton, had been either injured or grazed by the bullet.
 {¶ 10} Columbus Police Detective James McCoskey testified, without objection, to the authenticity of photo arrays presented to Richardson and Bolton. It was stipulated that a photo of appellant was placed in "Position #5" of the photo arrays.
 {¶ 11} Ava White ("White") testified that she knew Bolton's mother from church. White stated that on August 10, 2003, she went to visit Shotwell at her residence at E. 1111 18th Avenue. White testified that she observed a teenager sitting on a nearby porch. She stated that she had been at the Shotwell/Bolton residence for approximately five minutes when a man came from another home where children were playing and spoke to the teenager, using profanity. She saw the man lift up his shirt and show the brown butt of a gun. Then she heard the gun go off and screamed for Bolton to come to her. She identified the shooter as wearing clothing that was the colors of North Carolina State, sky blue and white. She was unsure whether he was wearing pants or shorts but was certain that he wore a sky blue and white jersey hanging out over his pants. She described the gun as being a handgun or a revolver and stated that when the gun went off she felt the heat from it and was struck with small pieces of concrete. She stated she was located about two steps away from the teenager on the stoop when the shot was fired. She identified appellant as being the individual who shot the gun on August 10, 2003.
 {¶ 12} Garrett testified that she lived on East 18th Avenue and that she had three children with appellant. She testified that August 7, 2003 was her daughter's birthday. On that date, Richardson and appellant exchanged words on her front porch. She interpreted Richardson's comments as being "similar to a threat." She stated that appellant told Richardson to go home and denied that appellant used profanity during the confrontation.
 {¶ 13} She testified that the shooting occurred at approximately 12:30 or 12:45 p.m. on August 10, 2003, while she was outside gathering her children. She testified she saw a person — not appellant — hit Richardson in the head with a gun. She was unable to give a good description of the assailant but testified that he was somewhat smaller, darker skinned and possibly younger than appellant. She stated that after she heard the gunshot she called appellant at his mother's home to discuss the incident with him. She stated that she placed the call at approximately 1:10 p.m. Appellant's mother, Vera Sykes ("Sykes") answered the call and told Garrett that appellant was outside washing Sykes' car. She testified that appellant had not come around her neighborhood since August 7, 2003.
 {¶ 14} Timothy Moore ("Moore") testified that he works as a handyman and that he met with Sykes on August 10, 2003, to give her an estimate to remove a tree from her yard. Moore testified that he arrived at the Sykes residence at approximately noon and noticed that appellant was present and washing Sykes' car. He testified that he remembers the time because he observed the time on the dash board clock of a truck he passed as he was walking across the yard. On cross-examination, Moore admitted that he had previously told an officer that he determined the time of his arrival at the Sykes residence by looking at his own truck's dashboard clock.
 {¶ 15} Sykes testified regarding the incident of August 7, 2003, and the events of August 10, 2003. She testified that when she came home from church, appellant was in bed. She woke him and asked him to wash her car. She testified that Moore was at her home at approximately 12:30 p.m. to give an estimate for tree removal. She testified that appellant was still at her home washing her car when Garrett called him to tell him of a shooting. She stated that appellant was living at her home in August 2003 and that he still lived there at the time of trial. She stated that she has never known appellant to own or possess a firearm.
 {¶ 16} Appellant testified on his own behalf. He stated that he lived with his mother in August 2003, at her home on East Fourth Avenue in Columbus. He testified that on August 7, 2003, he met Richardson for the first time when Richardson came to his home and began arguing with members of his family. He indicated that he was unaware of what the argument was about but that he wanted it to end and went outside and told Richardson to go home. Appellant denied using profanity and testified that as Richardson turned to leave he turned back and said something to those who remained on the porch.
 {¶ 17} Appellant denied going to Garrett's home at any time on August 10, 2003. He recalled being awakened by his mother at approximately 11:30 a.m. that morning, and then washing her car, per her request, for approximately one hour. He testified that Moore arrived at the house in a white truck while appellant was washing the car. Appellant denied having any contact with Richardson on August 10, 2003, or possessing or shooting a handgun at anytime in his life. He denied that he owned a North Carolina State jersey, or any pale blue or white basketball jersey or shorts. Appellant testified that he did not believe his children were at risk at the time of the shooting and was not upset by Garrett's telephone call regarding the shooting.
 {¶ 18} In rebuttal, the State called Ohio Highway Patrolman, Steven Herron ("Trooper Herron"). Trooper Herron testified that he interviewed Moore in January 2005 regarding the events of August 10, 2003. Trooper Herron testified that Moore told him that he had parked his vehicle at the Auto Zone located approximately 100 yards from the Sykes residence and that, upon his return to the vehicle after giving Sykes an estimate for tree removal, noticed that the time on the clock in his vehicle "stated exactly 1:00 p.m."
 {¶ 19} Following deliberations, the jury returned a verdict of guilty on Count One, felonious assault perpetrated against Richardson, and guilty on the corresponding gun specification. The jury returned a verdict of not guilty on Count Two, felonious assault perpetrated against Bolton.
 {¶ 20} Prior to sentencing, appellant filed a motion for a new trial seeking reversal of the guilty verdict, arguing that it was inconsistent with the jury's not guilty verdict on Count Two. The court overruled the motion. He has not appealed that decision.
 {¶ 21} Appellant advances the following assignment of error for our review:
The verdict is against the sufficiency and manifest weight of the evidence.
 {¶ 22} The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 23} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, supra, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. The reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 24} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v.DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction."Thompkins, supra, at 387.
 {¶ 25} Appellant was convicted of a violation of R.C.2903.11, which provides, in relevant part: "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 26} Appellant contends that because the jury found him not guilty of the felonious assault perpetrated upon Bolton, the evidence was insufficient to prove that he committed the felonious assault subject of Count One. More specifically, appellant argues that the not guilty verdict on Count Two reveals that the jury must have believed his alibi; thus, he argues, because the evidence demonstrates that there was only one shot fired and therefore only one shooter, the guilty verdict on Count One is not supported by sufficient evidence. We disagree.
 {¶ 27} The evidence presented at trial, when viewed in the light most favorable to the prosecution, is sufficient to establish that appellant knowingly caused physical harm to Richardson by means of a deadly weapon. The jury heard testimony from multiple witnesses who identified appellant as being the individual who approached appellant, pulled a gun from his waist and hit Richardson in the head with the gun. Seconds later, a gun was fired and struck Richardson. This is sufficient evidence upon which the jury could conclude that appellant knowingly caused physical harm to Richardson with a deadly weapon. Likewise, the jury was free to conclude that appellant's intent to harm Richardson (in this case, the mental state of "knowingly") did not transfer to Bolton. It is within the province of the trier of fact to make determinations with respect to credibility. SeeState v. Lakes (1964), 120 Ohio App. 213, 217, 29 O.O.2d 12,201 N.E.2d 809 ("it is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witnesses").
 {¶ 28} We conclude that the jury was presented with evidence that, if believed by the jury, is sufficient to support a verdict of guilty on the offense of felonious assault perpetrated against Richardson. Similarly, the jury was presented with sufficient evidence to support a finding of guilty on the gun specification. Moreover, based on the record before us, we cannot say that the evidence weighs heavily against the conviction or that the jury clearly lost its way. Therefore, we do not find that appellant's convictions are against the manifest weight of the evidence.
 {¶ 29} For all the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and French, JJ., concur.