OPINION
{¶ 1} Appellant, Earl S. Saunders (hereinafter "appellant"), filed this appeal seeking reversal of a judgment by the Franklin County Court of Common Pleas convicting him of one count of domestic violence, a felony of the third degree. Appellant, having *Page 2 
waived his right to a jury trial, was tried to the court in which the following facts were established.
 {¶ 2} It was undisputed by the parties that on May 20, 2005, appellant and his wife, Charlene Saunders ("Saunders"), were living separately. Appellant visited with his family in their home, played with his two sons and cut the lawn. After the children were put to bed, appellant and Saunders began discussing their marriage and a disagreement ensued.
 {¶ 3} It is at this point that the parties' version of the events diverge. Saunders claims appellant came across the room to her, pushing her down and striking her in the chest and legs multiple times. While Saunders indicated she was unsure precisely how many times she was struck, she stated "it was a lot of punches, maybe 20." Saunders testified she ran to the kitchen to call for help where she was hit by appellant in the chin. Saunders states that appellant told her that he was going to "do it right this time and not leave any marks and that he was not drunk."
 {¶ 4} According to Saunders, approximately one and one-half hours after she called police, Columbus police arrived at her residence. Saunders testified that she did not show the officer the bruises she received from appellant because she was clothed and the bruises were located in personal or covered areas. Saunders testified that she suffered severe pain, bruising, and could barely walk the day after the incident.
 {¶ 5} Because the police did not file charges, Saunders went to the Columbus City Prosecutor's Office the next day where she was interviewed by Intake Officer Amy *Page 3 
Rabe ("Rabe"). Saunders claimed that at that time she had visible injuries and was in physical pain and could barely walk. Rabe took photographs of Saunders' injuries. Saunders, however, claimed the photographs did not accurately depict the ultimate bruising, as her bruises worsened over a period of two weeks after the incident. Saunders further testified she was in pain for two weeks.
 {¶ 6} Saunders testified that appellant had been convicted previously of domestic violence against her in 2002 and 2003. She also testified that in June of 2005, after the incident in question, appellant filed a restraining order against her.
 {¶ 7} Saunders was questioned as to statements made by her during the intake interview with Rabe. Specifically, Saunders was given an opportunity to review the intake summary completed by Rabe in which Rabe indicated that appellant's arm may have hit Saunders in the chin when he clapped his hands in front of her face. Saunders denied telling Rabe that she suffered an injury to her chin in such a manner. However, Saunders did admit that on a previous occasion, appellant had clapped his hands in such a manner and hit her face. Saunders disputed the intake summary completed by Rabe and claims that the summary appeared to be altered. Saunders agreed on cross-examination that her statement at the prosecuting attorney's office indicating that appellant "hit her in the chin, punched her in the chest and punched both her legs" was "very different" than the account given by her in court.
 {¶ 8} Rabe testified that she conducted an interview with Saunders at the Columbus City Prosecutor's Office where she photographed bruises on Saunders' right *Page 4 
thigh and a red mark on her chin. Rabe testified that the bruises were more apparent when observed in person then in a photograph. Rabe recalled Saunders walking with a bit of a limp, but admitted not noting it in her intake summary. Her intake summary indicated that appellant clapped his hands in front of Saunders' face and may have hit her.
 {¶ 9} Rabe testified that her intake summary is a summarization of the interview with a witness in which a witness is not quoted verbatim. Rabe acknowledged that there may be discrepancies between a witness' statement and the intake summary and that Saunders was not given an opportunity to review Rabe's summary.
 {¶ 10} Rabe also testified to completing an injury report which is a documentation of both visible injuries and areas of pain complained of by a witness. She testified that Saunders complained of pain in her ears, chest and thighs.
 {¶ 11} Columbus Police Officer Shawn Collier ("Collier"), was dispatched to Saunders' home. According to Collier, he remained at the location for approximately 15 minutes and saw no visible injuries on Saunders. He testified that Saunders was upset and crying and she stated that her chest, arms and legs hurt.
 {¶ 12} Appellant testified in his own behalf and testified regarding his troubled marriage with Saunders. He stated that on the evening in question, he had gone to Saunders' residence to talk with his wife as he was interested in saving his marriage and visiting his children. He admitted that the parties argued but testified that it could not have been loud as the children did not wake up. According to appellant, shortly after the *Page 5 
argument began, he announced he was leaving and walked home to his mother's house. Appellant denied any physical confrontation between the parties.
 {¶ 13} According to appellant, on the Sunday after the incident, while on the way to church with his mother, he stopped at Saunders' home to drop off food and toys for the children. It was then that he was informed by Saunders that there was a warrant out for his arrest.
 {¶ 14} Appellant testified that he returned to the car and told his mother, Phyllis Stevens ("Stevens"), of the conversation with Saunders. Stevens went into the home to talk with Saunders. Appellant testified that Saunders did not appear to be in pain and that he did not notice any injury to her face. Appellant turned himself in to authorities and admitted to being previously convicted of domestic violence against Saunders on two previous occasions. Appellant denied assaulting Saunders on May 20th and denied making a statement that he would "do it right this time." Appellant testified that he had changed his previously violent behavior by completing an anger management program, parenting classes and Alcoholic Anonymous.
 {¶ 15} Stevens was the final witness. She testified that on May 20, appellant lived with her and had gone to Saunders' residence. Stevens testified that she had been under the impression that appellant would spend the night with Saunders that evening, but that he had returned due to an argument with Saunders.
 {¶ 16} On the Sunday after the incident, Stevens testified that she and appellant dropped off groceries and toys to Saunders on their way to church. She stated appellant *Page 6 
returned to the car and was upset about charges being filed against him. According to Stevens, both she and appellant went back into the home to talk to Saunders and that despite being 12-20 inches away from Saunders, she did not observe any visible injury or notice Saunders having any difficulty moving. Stevens testified that prior to this incident she had a good relationship with Saunders.
 {¶ 17} Appellant advances one assignment of error for our review:
 THE EVIDENCE WAS INSUFFICIENT TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND/OR HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 18} Appellant was convicted of a violation of R.C. 2919.25(A) which defines domestic violence as knowingly causing, or attempting to cause, physical harm to a family or household member. It is undisputed that Saunders was a household member as appellant and Saunders were married at the time. Therefore, the only issue to be resolved at trial was whether appellant knowingly caused, or attempted to cause, physical harm to Saunders.
 {¶ 19} R.C. 2901.22(B) provides that, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or physiological impairment, regardless of its gravity or duration." *Page 7 {¶ 20} Appellant contends that the verdicts are against the manifest weight and not based on sufficient evidence due to inconsistencies between Saunders' statements given to the intake officer and her testimony at trial. Furthermore, appellant argues that Saunders testimony does not comport with the photographs taken of her injuries. Therefore, appellant argues he could not have been convicted of the offense of domestic violence as there has not been proof beyond a reasonable doubt of each and every element of the offense.
 {¶ 21} The Supreme Court of Ohio outlined the role of an appellate court presented with a sufficiency of evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781,61 L.Ed.2d 560.
 {¶ 22} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175,20 OBR 215, 485 N.E.2d 717. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. *Page 8 
Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v.Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. The reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 23} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 24} Appellant challenges Saunders' credibility by raising inconsistencies between her testimony and statements made to Rabe at the prosecutor's office. Appellant agues that Saunders' testimony that appellant punched her in the chest once and her thighs as many as 20 times is unbelievable because had appellant assaulted Saunders in such a way, appellant contends visible injuries would have resulted. *Page 9 
 {¶ 25} Appellant further asserts that Rabe's intake summary indicating that appellant clapped his hands in front of Saunders' face resulting in her being struck in the face must be an accurate representation of the incident given to Rabe by Saunders as Saunders admitted on cross-examination that such unusual conduct had occurred between the parties previously. Appellant contends such conduct does not constitute knowingly causing, or attempting to cause, physical harm as required by the domestic violence statute.
 {¶ 26} Appellant further argues that appellant's testimony is more credible than that of Saunders given the fact that he "turned himself in" to face charges. Appellant opines that the evidence suggests that if there was a physical confrontation at all, that at the very most, Saunders was pushed by appellant onto the couch and that he clapped his hands in front of her face resulting in incidental injuries. Appellant cites the case of State v. Dodson, Columbiana App. No. 05 CO 28,2006-Ohio-1093, for the proposition that incidental injuries do not constitute domestic violence and do not fall within the ambit of R.C.2919.25(A).
 {¶ 27} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' *Page 10 
testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v.Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22;State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 28} It is within the province of the trier of fact to make determinations with respect to credibility. State v. Lakes (1964), 120 Ohio App. 213, 29 O.O.2d 12, 201 N.E.2d 809. If believed by the trial court, Saunders' testimony establishes direct evidence that appellant knowingly caused, or attempted to cause, her physical harm in such a manner that her injuries could not be considered incidental. Specifically, the trial court found that the truth of the incident lies somewhere between the testimony of appellant and Saunders. The trial court stated that the incident was "probably not as serious as she testified about, but certainly more serious than he was willing to testify about." The court went on to state, "I could see where she'd get to you. But that doesn't give him the right to cause, or attempt to cause, physical harm. There's no question in my mind she got to him. I mean, and challenged his manhood and got to a point where he couldn't *Page 11 
take it anymore. And there was — I believe there was physical harm caused." (Tr. 189-190.)
 {¶ 29} After careful review of all the evidence, when viewed in the light most favorable to the prosecution, we conclude that the trier of fact was presented with direct evidence sufficient to support a finding that appellant knowingly caused, or attempted to cause, physical harm to a family or household member. The evidence establishes that appellant struck Saunders multiple times and that she suffered pain and bruising. Moreover, based on the record before us, we cannot say that the evidence weighs heavily against the convictions or that the fact finder clearly lost its way. Therefore, we do not find that appellant's conviction for domestic violence is against the manifest weight of the evidence.
 {¶ 30} For all the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed. Before: PETREE and KLATT, JJ., concur. *Page 1