DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Vincent M. Niepsuj has appealed from a decision of the Akron Municipal Court that found him guilty of criminal trespass. This Court affirms.
 I {¶ 2} On the afternoon of September 23, 2002, Appellant was arrested on the property of the University of Akron. The arrest warrant indicates that Appellant "was found on the University of Akron property after he was issued a written trespass warning, verbally warned and previously arrested for same. [Appellant] caused alarm to others, they in turn called police and [Appellant] was found in violation of previous warnings." Appellant was charged with criminal trespass, a violation of R.C. 2411.21 and a charge for which he was then currently on probation from a prior case. Appellant pleaded not guilty and the matter proceeded to a jury trial. The jury found Appellant guilty and he was sentenced to thirty days in the Summit County Jail and fined $500 plus court costs. The fine was suspended. Appellant was further ordered "not to return to the University of Akron [property.]"
 {¶ 3} Appellant has timely appealed, asserting eight assignments of error. We have consolidated his assignments of error to facilitate review.
 II {¶ 4} As an initial matter, this Court notes that Appellant, acting pro se, has listed eight assignments of error, but he has presented only one argument for review. His assignments of error are as follows:
Assignment of Error Number One
"Not all elements of [the] crime were proven by the state."
Assignment of Error Number Two
"[The] trial court abused its discretion in stopping highly Relevant line of questioning to sergeant newman regarding [The] scope of [the] trespass warning."
Assignment of Error Number Three
"[The] trial court abused its discretion in stopping highly relevant line of questioning to patrol officer shannon regarding original alleged incidence [sic] of trespassing."
Assignment of Error Number Four
"The trial court erred in not granting acquittal."
Assignment of Error Number Five
"[The trial] court abused its discretion in sentencing."
Assignment of Error Number Six
"Ineffective assistance of counsel."
Assignment of Error Number Seven
"[The] state did tamper with evidence."
Assignment of Error Number Eight
"[The] trial court abused its discretion in its admonishing appellant in open court unnecessarily."
 {¶ 5} The sole issue Appellant has presented for this Court's review is whether the state proved beyond a reasonable doubt that Appellant did not have privilege to be on the property of the University of Akron on the afternoon of September 23, 2002. This Court answers the question in the affirmative.
 {¶ 6} Although Appellant's brief is primarily a self-serving narrative, rather than a series of cogent arguments, it appears that he is attempting to argue that he had privilege to be on the property of the University of Akron ("University") because 1) the University is a public university; and 2) the prior warnings he received to remain off the property of the University did not revoke his authority to be on the property for legitimate reasons. Based upon these arguments, Appellant has maintained that his conviction was against the manifest weight of the evidence and that there was insufficient evidence to find that he did not have privilege to be on the property of the University.
 {¶ 7} This Court has previously explained that the sufficiency and manifest weight of the evidence are legally distinct issues. State v.Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, ¶ 23, citing Statev. Thompkins (1977), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. Manges, supra, 2002-Ohio-3193, at ¶ 25. In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 8} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. Id. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant.Otten, 33 Ohio App.3d at 340.
 {¶ 9} In the instant matter, Appellant was convicted of criminal trespassing, a violation of R.C. 2911.21(A)(3).[1] That statute provides, in pertinent part:
"(A) No person, without privilege to do so, shall do any of the following:
"* * *
"(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access[.]"
 {¶ 10} The term "privilege" is defined in the criminal code as, "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).
 {¶ 11} At trial, several witnesses presented testimony regarding Appellant's prior trespass warnings and restriction from entering the University's property. Sergeant Jeffrey Newman, an officer with the University of Akron Police Department, testified that he received a complaint from staff members at the University of Akron Law Library on the afternoon of September 23, 2002. The complaint concerned "an unwanted person [at the University of Akron Library] that [the University employees were] aware * * * was not legally allowed to be in that building." When Sergeant Newman arrived at the University of Akron Law Library he recognized Appellant from a prior encounter that had occurred on June 26, 2002.[2] Sergeant Newman stated that on June 26, 2002, he and another officer, Officer Sherry Shannon, responded "to a call of a person in a hallway that was making other faculty and staff and student members uneasy by his presence." It was at this time that Sergeant Newman first met Appellant.
 {¶ 12} On June 26, 2002, Officer Shannon issued Appellant a trespass warning. Because the officers were "informed by Dr. Finch * * * that [Appellant] was — I'll say stalking but pursuing Victim's Assistance because of an issue involving his wife or soon to be ex-wife with a protection order that someone gave some advice on." Sergeant Newman explained that a trespass warning is "a tool at the University of Akron Police Department" and the trespass warning informed Appellant "[t]o keep off of all University of Akron property." The sergeant further explained that a trespass warning is issued:
"[W]hen there's a person on University of Akron property, it's not conducive to higher learning and it may disrupt or be an annoyance to other people that are there for the true purpose of learning or educating or to conduct normal business. The trespass warnings are issued to those that we are called upon, that are offensive or annoying other people that are trying to do their jobs."
 {¶ 13} Sergeant Newman read the cautionary statements printed on the trespass warning to the jury. The trespass warning read, in pertinent part: "This warning will remain in effect until rescinded by the University of Akron Police Department. The named person on this warning may apply to the University of Akron Police Department. * * * I understand that a future violation will result in criminal prosecution." The trespass warning was signed by Appellant. Sergeant Newman testified that he personally witnessed Appellant sign his name on the trespass warning and that he was present when the warning was read aloud and explained to Appellant. In fact, the trespass warnings were explained to Appellant approximately "10 or more" times because Appellant "debate[d]" with the officers for "about 10 to 15 minutes" over the trespass warning. By the end of the "debate," however, Sergeant Newman believed that Appellant appeared to understand the nature and scope of the trespass warning.
 {¶ 14} As to the events that took place on September 23, 2002, Sergeant Newman stated that "[a]s soon as [he and Officer Rich Beal] walked through the doors of the [University of Akron] Law Library, two employees pointed at [Appellant] to us. They said they were informed by a law clerk of his knowledge that he's not allowed to be on the campus." The officers approached Appellant and asked him to step into the hallway so they could speak to him. Sergeant Newman testified that they "asked [Appellant] if he was aware of the trespass warning. He says yes he was and he was willing to leave. And we also told him [that] the trespass warning means we're going to issue a summons for criminal trespass."
 {¶ 15} Sergeant Newman also testified that during his conversation with Appellant he learned that Appellant was not a student or staff member at the University and that the June 26, 2002, trespass warning was still in effect because it had not been rescinded. When Sergeant Newman informed Appellant of the status of his prior trespass warning Appellant told Sergeant Newman that he "was [at the University of Akron Law Library] to do some law research."
 {¶ 16} After advising Appellant of the effect of his violation of the June 26, 2002, trespass warning, Sergeant Newman issued another trespass warning because "every time [University of Akron police officers] have contact with somebody that has a previous [trespass] warning, [they] just re-issue another warning." Sergeant Newman testified that he explained the policy for trespass warnings just as he had done on June 26, 2002, and that he asked Appellant to sign the warning. Appellant refused to sign the warning. Appellant was then taken to the police station, where he was issued a summons and released.
 {¶ 17} On cross-examination, Sergeant Newman stated that "no trespass" signs were posted on all the exterior doors of the Polsky Building, which is the building where Appellant was given his first trespass warning on June 26, 2002. When asked if there was "any other general category of persons that may be, that are of concern or of interest when it comes to thinking about who should be considered when it comes to trespass[,]" Sergeant Newman responded: "Everyone's welcome to come to the University of Akron. It's only until we get a call of a disturbance or an annoyance or any inconvenience to other[s] that are trying to learn, that these are called about." The officer further explained that there is no written policy with regard to determining who is authorized to be on the University's property. The officer also explained that in determining whether an individual should be restricted from entering any part of the University's campus or only a specific area, i.e., a library or dormitory, an officer has to weigh public safety concerns with the individual's rights to be on campus. In this particular case, Sergeant Newman explained that he chose the most restrictive category on the trespass warning because he was "called to the Law Library by some law clerks that were aware of the fact that [Appellant was not] allowed to be on the University of Akron campus, and that [Appellant] had just went to trial on such a case and [he was] convicted of a previous criminal trespass charge involving the University of Akron."
 {¶ 18} Officer Sherry Shannon also testified at trial. Office Shannon testified that on June 26, 2002, she was called to the Polsky Building because there was a suspicious person that the staff and faculty "were having trouble" with. When Officer Shannon arrived, she asked Appellant his name and told him to explain why he was at the University. Appellant told Officer Shannon that "he was just writing a letter to the doctor that was in the Family Services, which are the people that called [her]." Officer Shannon stated that Appellant became visibly upset and "offish." The officer further explained that:
"[Appellant] was told to leave, sign the trespass warning and leave. He refused to do either one. He didn't want to sign the trespass warning, and he didn't want to leave. At that time our goal was not to arrest him, but just to have him leave the building, and he continued to sit there and say he wouldn't sign the trespass warning unless we would let him into certain buildings on the campus, and which [Officer Shannon] told him [she] couldn't do. He would have to sign [the trespass warning] for the whole campus. He wouldn't do it, and he wouldn't leave. * * * Finally Sergeant Newman told him, [he had to either leave or he would be placed under arrest."
 {¶ 19} Officer Shannon testified that Appellant was then escorted out of the building and he was taken to the police station, where he was booked and received an arrest summons. Officer Shannon explained that she issued the trespass warning to Appellant because of the "issue with his ex-wife having business with the Family Services in the Polsky Building, and with her order against him, it was a conflict, so he was not to be in there. And as far as the faulty there, they were actually scared of him. So they locked the door, as a matter of fact, while he was out in the hallway." Officer Shannon felt, as did Sergeant Newman, that Appellant sufficiently understood the "breadth and the scope" of the trespass warnings.
 {¶ 20} Appellant testified on his own behalf. On direct examination, he described the strained relationship that existed between he and his wife. Appellant explained that their relationship had deteriorated to the point where a protective order was issued against him. He stated that it was because of this protective order that he was at the Polsky Building on June 26, 2002. Appellant stated that he wanted to talk to Dr. Bob Denton, who was employed with Victims Assistance. He explained that he was prohibited from visiting Victims Assistance because of the protective order, so he went to the Polsky Building where Dr. Denton's office was located. Appellant testified that he used the Polsky Building "a lot, whenever." Appellant explained: "My mindset isn't that I should never, ever be away from the University. I find my home in the University." Appellant testified that on the afternoon of June 26, 2002, he walked in through the main entrance of the Polsky Building "which in fact seems to have these no trespass signs. But you know, I use [the University] like it's a second home."
 {¶ 21} Once in the building, Appellant went to the fourth floor, where he was taken to Mrs. Fink. Appellant proceeded to ask Mrs. Fink where he could find Dr. Denton and he learned that Dr. Denton was unavailable. Because Dr. Denton was unavailable at the time, Appellant began to write a letter to Dr. Denton. Appellant testified that "[he] tried to start [the letter] short, but [it got] bigger and bigger." Appellant stated that it took him approximately twenty-five minutes to write the letter to Dr. Denton and once the letter was close to being completed, Appellant asked the receptionist if he could make a photocopy and "[s]he said no." As he was finishing the letter, Appellant moved from the office to the hallway. Appellant stated that he noticed that the staff had locked the outer office door near where he sat. Once he realized the door was locked he "[knew] something's up, but I'm not the type of person that just — well, I'm leery to walk away if something's up. * * * I feel the best way is to face a person."
 {¶ 22} Appellant testified that Officer Shannon arrived on the scene just as Appellant was finishing the letter. Appellant admitted that he was reluctant to give Officer Shannon his name because "[he's] on the record. * * * If the computer system[s] are working right, I'm billed across the whole United States as being a threat to my own children." Appellant testified, as did both Sergeant Newman and Officer Shannon during the state's case-in-chief, that Sergeant Newman arrived on the scene and asked for his identification. When Appellant refused, Sergeant Newman frisked him and checked for identification. Appellant explained that he refused to sign the trespass warning because it required him to stay off all University property. He testified that "one of the things I said to [Sergeant Newman], sir, I have many things that I do on this campus right now. I have an appointment this coming Monday. I have an appointment this coming Monday at the Counseling Center. * * * I told [Sergeant Newman] I have books checked out from the Science of Technology library, I use Bierce Library very frequently[.]"
 {¶ 23} Appellant stated that he was arrested and taken to the police station, where he eventually signed the trespass warning "only as a cooperative gesture."
 {¶ 24} Appellant believed that the prior June 26, 2002, trespass warning was invalid and that "[i]t was not an order to stay off. It was a warning." He testified that on September 26, 2002, he went to the University of Akron Law Library to conduct some research for an appeal he had currently pending in this Court. When Sergeant Newman arrived, Appellant "just got up and left with them, because [he] knew they were there for [him]. And [they went] back to the station, and once again [they signed] another trespass with the full extreme restriction." Appellant stated that when Sergeant Newman escorted him out of the police station, "[h]e didn't say, well you make sure you stay away from the campus the rest of eternity. He never said any of that."
 {¶ 25} On cross-examination, Appellant conceded that he was aware that when he signed the June 26, 2002, trespass warning that the warning indicated that he must keep off all University property. He also admitted that he knew that the trespass warning had not been rescinded. Appellant stated that despite this knowledge, he believed that he was not in violation of the order when he was on the property of the University on the afternoon of September 23, 2002.
 {¶ 26} The testimony presented at trial indicates that Appellant was fully aware of the fact that he was restricted from all University property. He was previously given a trespass warning and arrested for criminal trespass on June 26, 2002. In fact, this Court upheld Appellant's conviction for criminal trespass, a violation of R.C.2911.21(A)(4). See Akronv. Niepsuj, 9th Dist. No. 21280, 2003-Ohio-3791. Furthermore, Sergeant Newman testified that the second time Appellant unlawfully entered onto the University's property, the September 26, 2002 incident and the subject of the instant proceedings, Appellant was again read the policy regarding trespass warnings. Appellant even testified on direct that there were "no trespass" signs posted throughout the campus. Thus, it is clear that Appellant was well aware of the fact that he was barred from all University property.
 {¶ 27} It is also clear from the record that Appellant did not have the privilege to enter the University of Akron Law Library. The University may be a public university, but the campus is private property and pursuant to R.C. 3345.21[3] it has the authority to revoke an individual's privilege to enter upon its property. See State v. Cahill
(Dec. 31, 1990), 10th Dist. No. 90AP-404, 1990 Ohio App. LEXIS 5905. "[T]he existence of circumstances under which the privilege may be revoked * * * are questions for the jury to decide." City of Euclid v.Moore (Dec. 9, 1999), 8th Dist. No. 75143, 1999 Ohio App. LEXIS 5900, at *18, appeal not allowed (2000), 88 Ohio St.3d 148. The jury was presented with evidence which indicated that agents of the University, i.e., University police officers, properly revoked any privilege Appellant may have had to enter upon the University's property on June 26, 2002. The revocation of any privilege Appellant may have held prior to June 26, 2002, was final because the University did not reinstate Appellant's privilege or rescind its prior trespass warning. Consequently, we find that Appellant did not have privilege to enter upon the University's property and therefore Appellant's conviction was not against the manifest weight of the evidence.
 {¶ 28} As to Appellant's claim that there was insufficient evidence for a jury to find him guilty, we note that this Court has previously held that a "defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 7, quoting State v. Miley (1996), 114 Ohio App.3d 738, 742. Here, Appellant renewed his Crim.R. 29 motion at the close of all the evidence, therefore Appellant has preserved this issue for appeal. However, we need not consider Appellant's assertion that there was insufficient evidence to prove that Appellant was not privileged to be on the property of the University because this Court has previously observed that "because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006432, at 4. As we have already determined that Appellant's conviction was not against the manifest weight of the evidence, we must necessarily conclude that there was sufficient evidence to support the verdict in this case. Accordingly, Appellant's assignments of error are overruled.
 III {¶ 29} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Slaby, P.J. and Carr, J., concur.
[1] The arrest summons and the trial court's journal entry fail to specify which provision of R.C. 2911.21(A) Appellant violated. However, the initial complaint and the trial court's jury instructions indicate that Appellant was charged with violating R.C. 2911.21(A)(3). The trial court instructed the jury that: "Before you can find the [Appellant] guilty of Criminal Trespass, you must find beyond a reasonable doubt that on or about the 23rd day of September, 2002, and in the City of Akron, Summit County and State of Ohio, [Appellant], without privilege to do so, did recklessly enter or remain on the land or premises of the University of Akron, as to which notice against unauthorized access or presence was communicated actually to [Appellant]."
[2] Appellant previously appealed his June 26, 2002, arrest. See Akronv. Niepsuj, 9th Dist. No. 21280, 2003-Ohio-3791. This Court affirmed his conviction for violating R.C. 2911.21(A)(4).
[3] R.C. 3345.21 provides, in pertinent part:
"The board of trustees of any college or university which receives any state funds in support thereof, shall regulate the use of the grounds, buildings, equipment, and facilities of such college or university and the conduct of the students, staff, faculty, and visitors to the campus so that law and order are maintained and the college or university may pursue its educational objectives and programs in an orderly manner.
"The board of trustees of each such college or university shall adoptrules for the conduct of the students, faculty, visitors, and staff, andmay provide for the ejection from college or university property,suspension or expulsion of a person who violates such regulations. All such rules shall be published in a manner reasonably designed to come to the attention of, and be available to, all faculty, staff, visitors, and students." (Emphasis added.)