OPINION
{¶ 1} Defendant-appellant, Kennard Peoples ("appellant"), appeals from the February 8, 2005 judgment of the Franklin County Municipal Court finding appellant guilty of criminal trespass in violation of Columbus City Code 2311.21 and assault in violation of Columbus City Code 2303.13. The case was tried to the court. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The facts adduced at trial consist of the following. Jason Nalbach ("Nalbach"), a police officer with the Valleyview Police Department, was working as a security guard at Mount Carmel West Hospital ("hospital"). He testified that, when employed as a security guard by the hospital, part of his duties was to respond to calls "from people in the ER needing assistance, suspicious persons on the grounds, on the property, [and] inside the hospital." (Tr. 7.) Nalbach testified that the hospital is private property.
 {¶ 3} On October 16, 2004, Nalbach, dressed in his hospital security guard uniform, nametag and badge, was on duty monitoring the hospital property through closed circuit television with fellow security guards Brad Reynolds ("Reynolds"), and Adam Boyle ("Boyle"), in the security camera center. He stated that he observed appellant soliciting people for money and picking cigarettes out of ashtrays on hospital grounds. After observing appellant, Nalbach told Reynolds and Boyle that he was going to approach appellant to see if appellant was visiting a patient. Nalbach testified that he approached appellant outside the main entrance of the hospital, identified himself, and asked appellant if he was at the hospital to visit a patient. Nalbach stated that appellant told him that he was not visiting a patient. Nalbach next asked appellant if he was at the hospital to seek treatment for himself. Appellant told him that he was not. At that point, Nalbach told appellant that if he had no business at the hospital, he needed to leave the hospital's property.
 {¶ 4} According to Nalbach, appellant became "very belligerent" and "started using a lot of profanity" upon being told that he had to leave the property. (Tr. 9.) Nalbach testified that the appellant was wearing "a heavy winter jacket." (Tr. 20.) Nalbach further testified that he observed appellant repeatedly place his hands inside the pockets of his jacket. Out of concern for his safety, Nalbach asked appellant to take his hands out of his jacket and keep his hands at his sides while he was speaking to Nalbach. Nalbach stated that appellant wanted to get a pen and paper out of his jacket in order to write down Nalbach's name. Nalbach continued to talk with appellant after appellant had put the pen and paper away. Appellant became "more belligerent and angered." (Tr. 10.) Consequently, Nalbach called Boyle and Reynolds for assistance.
 {¶ 5} Nalbach testified that after Boyle and Reynolds arrived, they contacted the hospital dispatcher and requested the dispatcher to contact the Columbus police to assist with removing appellant from the hospital property. According to Nalbach, appellant continued to place his hands in and out of his jacket pockets even after Boyle and Reynolds arrived, and that they requested appellant several times to keep his hands at his sides. Nalbach stated that after the other security guards arrived, appellant "dropped his right leg back in what I consider a fighting stance." (Tr. 11.) Nalbach demonstrated the posture to the trial court during his testimony, indicating that appellant dropped his right foot back and clenched his fists by his sides. Nalbach stated that appellant kept a fighting stance for the duration of the time he spoke with the guards.
 {¶ 6} According to Nalbach, appellant continued to place his hands into his jacket pockets. Nalbach testified that he observed appellant place his left hand into his left pants pocket, a pocket that he had not observed appellant place his hand in previously. Nalbach stated that he told appellant to remove his hand immediately, but that appellant refused and continued to fumble around in his pocket. Nalbach testified that he then stepped towards appellant and grasped appellant's left wrist with both of his hands, and removed appellant's hand from his pocket.
 {¶ 7} Nalbach testified that as he was removing appellant's hand from his left pants pocket, appellant swung at Nalbach with his right fist and struck him on the chest near the underarm causing Nalbach pain. At that point Reynolds attempted to gain control of appellant by grabbing a hold of appellant's wrist in an "arm bar." (Tr. 14.) Appellant fell to the ground on his stomach with his hands underneath his body tucked into his chest. Nalbach testified that they ordered appellant to stop resisting them. Nalbach stated that appellant was trying to bite Reynolds, so he held appellant's head while Reynolds tried to pull appellant's arms out from underneath appellant. Boyle attempted to gain control of appellant's left hand.
 {¶ 8} According to Nalbach, he instructed appellant throughout the encounter to leave the premises at least six times. He further stated that both Reynolds and Boyle instructed appellant to leave at least once.
 {¶ 9} On cross-examination, Nalbach was questioned as to whether appellant was detained or whether appellant was free to leave throughout the confrontation. Although Nalbach stated appellant "was being detained because his freedom of movement was restricted," he denied appellant was being detained and testified that appellant was permitted to leave the property at any time. (Tr. 21.) He further testified that he did not tell appellant to stay on the property or ask him to stay, and had in fact asked appellant to leave. Nalbach also testified on cross-examination that he had asked appellant for identification. According to Nalbach, appellant produced a veteran's card with appellant's name and picture, but did not produce any state identification. Nalbach stated that he looked at the veteran's card and gave it back to appellant. Nalbach additionally stated that he gave appellant his veteran's card before Reynolds and Boyle arrived, and before appellant took a "fighting stance." (Tr. 24.) On redirect examination, Nalbach explained that when describing that appellant was detained on cross-examination, he was only using his personal definition of "detain."
 {¶ 10} Reynolds testified at trial on behalf of the City of Columbus that as part of his duties as a security guard at the hospital, he was expected to enforce the rules and regulations of the hospital as well as any state and federal laws that apply to health care facilities. Reynolds testified that he observed appellant on closed circuit television enter the hospital grounds on October 16, 2004. Reynolds stated that after observing appellant panhandling, he dispatched Nalbach to confront appellant. Reynolds stated that within a couple of minutes of Nalbach approaching appellant, Nalbach radioed asking for assistance. Reynolds testified that when he approached Nalbach and appellant, he observed the two of them in a verbal confrontation. Reynolds stated that appellant was very loud and belligerent by the time he arrived on the scene.
 {¶ 11} According to Reynolds, at the time he arrived, Nalbach was explaining to appellant that the hospital was private property and that appellant was required to leave unless appellant was personally seeking treatment or had other business at the hospital. Reynolds testified that appellant was verbally abusive and was using profane language. Reynolds observed appellant wearing a large jacket and stated that appellant placed his hands inside the pockets on his jacket repeatedly despite being asked several times to stop doing so. Reynolds testified that he personally ordered appellant to leave the hospital property. Reynolds stated appellant was escalating the encounter by his conduct and his "violent mannerisms." (Tr. 34.)
 {¶ 12} Reynolds testified that after he had told appellant several times to remove his hands from his pockets, appellant turned towards him. At that point, Reynolds stated that he "tapped" appellant's elbow in an effort to communicate to appellant to keep his hands out of his pockets while talking with the security guards. (Tr. 34.) According to Reynolds, appellant drew his right hand out of his jacket pocket, "wheeled around," and struck Nalbach on his left chest with a closed fist. Id. Reynolds testified that he did not see Nalbach touch appellant's arm in order to remove his hand from his pants pocket. Reynolds stated that after appellant struck Nalbach, a physical confrontation ensued in which the security guards attempted to subdue appellant. Appellant fell to the ground and continued to resist and fight them. Reynolds stated that by the time the Columbus police arrived, they had placed appellant in handcuffs.
 {¶ 13} On cross-examination, Reynolds stated that he did not recall hearing Nalbach ask appellant for identification. According to Reynolds, the first physical contact between the security guards and appellant was when Reynolds tapped appellant on the elbow. Additionally, Reynolds testified that he did not consider appellant to be detained until after he struck Nalbach because appellant had the opportunity to leave while talking with the security guards.
 {¶ 14} Appellant testified in his own defense. He stated that on October 16, 2004, he was crossing the hospital's property in order to visit a friend that lived adjacent to the hospital. Appellant stated that he had crossed the hospital's property on numerous other occasions. He further stated that as he was crossing the property, he gave directions to a couple in a vehicle that appeared lost. Appellant stated that after doing so, a female security guard approached him and asked him what he was doing. After telling her that he was giving directions to the couple, appellant stated that the security guard told him that he could proceed across the property.
 {¶ 15} Appellant stated he asked a woman for a cigarette, and after receiving one from the woman, he placed the cigarette in his jacket pocket. Appellant then testified that he proceeded to the main entrance of the hospital, and was about to pick up two cigarette butts from an ashtray when Nalbach approached him. According to appellant, Nalbach asked him what he had in his hand, to which appellant replied that he had nothing as he placed the cigarette butts in his jacket pocket. Appellant testified that Nalbach then asked him for identification. Appellant stated that he presented Nalbach with his veteran's card, and that after giving him the card, he asked Nalbach if he could leave. Appellant stated that Nalbach told him that he could not leave and that his veteran's card was not valid identification because it was not issued by the state. Appellant testified that he was never given back his veteran's card.
 {¶ 16} Appellant testified that he was detained by Nalbach and Reynolds and not free to leave. Appellant denied ever being asked to leave and stated that the security guards asked him if he was the person that had recently stolen a wheelchair from the hospital. Appellant testified that he decided to allow Nalbach to keep his veteran's card and attempted to leave, but that he was blocked from doing so by Nalbach. Appellant admitted placing his hands in his pocket to retrieve a pad of paper and a pencil in order to write down Nalbach's name.
 {¶ 17} According to appellant, he decided to leave a second time, but all three security guards were blocking him from leaving in the direction he entered the hospital property. Appellant stated that the security guards determined that he was the individual that had stolen the wheelchair. Appellant denied ever placing his hand into his pants pocket, and stated that when he reached his hand into his left jacket pocket another time, Nalbach grabbed and twisted his arm to the ground while Reynolds and Boyle tackled him. Appellant testified that at no time did he strike Nalbach. Specifically, appellant testified on direct examination as follows:
Q. Did you at any time strike Officer Nalbach?
A. Didn't have a chance to.
Q. Did you at any time strike Officer Reynolds?
A. No, ma'am. I didn't have a chance.
Q. Did you strike any of the officers involved?
A. No, ma'am. I didn't have a chance to.
(Tr. 56-57.)
 {¶ 18} On cross-examination, appellant again denied that he was ever asked to leave the hospital property. When asked why he did not choose to leave, appellant testified that he tried, but Nalbach told appellant that he was going to keep appellant's veteran's card and that he was going to be detained until the Columbus police arrived.
 {¶ 19} Appellant timely appealed his convictions, and asserts the following three assignments of error:
ASSIGNMENT OF ERROR NO. I.
THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT ON THE ASSAULT CHARGE WHEN THE EVIDENCE PRESENTED ON BEHALF OF THE CITY WAS INSUFFICIENT TO SUSTAIN THE FINDINGS BY PROOF BEYOND A REASONABLE DOUBT AND THE JUDGMENT OF THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
ASSIGNMENT OF ERROR NO. II.
IF THE ASSAULT CONVICTION IS SUPPORTED BY THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE, THEN THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE UNEQUIVOCALLY DEMONSTRATED THAT THE SECURITY GUARDS WERE THE FIRST TO USE FORCE AGAINST THE DEFENDANT AND THAT THE DEFENDANT WAS JUSTIFIED IN RESPONDING TO THIS USE OF FORCE IN DEFENSE OF HIS OWN PERSON.
ASSIGNMENT OF ERROR NO. III.
THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT ON THE CRIMINAL TRESPASSING CHARGE WHEN THE EVIDENCE PRESENTED ON BEHALF OF THE CITY WAS INSUFFICIENT TO SUSTAIN THE FINDINGS BY PROOF BEYOND A REASONABLE DOUBT AND THE JUDGMENT OF CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
 {¶ 20} Because appellant's first and third assignments of error are interrelated, we will address them together. Therein, he asserts that his convictions for assault and for criminal trespass were not supported by sufficient evidence and that the convictions were against the manifest weight of the evidence. Appellee asserts that there was sufficient evidence to support the verdicts, and that the verdicts were not against the manifest weight of the evidence.
 {¶ 21} The Supreme Court of Ohio explained the role of an appellate court presented with a challenge to the sufficiency of the evidence in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 22} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Thus, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" in determining whether the evidence is, in fact, sufficient.Jackson, supra, at 319. The weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80, 24 O.O.3d 150, 434 N.E.2d 1356. Consequently, a conviction will not be disturbed on the sufficiency of the evidence unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; Jenks, supra, at 273.
 {¶ 23} Appellant was convicted of assault in violation of Columbus City Code 2303.13. The complaint charging appellant with assault alleges in relevant part: "defendant, at Franklin County/Columbus, Ohio, on or about the 16 day of October, 2004 did: cause or attempt to cause physical harm; did knowingly cause or attempt to cause physical harm to another; to wit: Jason A. Nalbach, by means of striking victim in the side with a closed fist. in violation of section 2303.13(A) City Code, a Misdemeanor of the M-1 [first] degree." (Sic.)
 {¶ 24} Columbus City Code 2303.13(A) states in relevant part, "No person shall knowingly cause or attempt to cause physical harm to another." Pursuant to Columbus City Code 2301.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 25} Here, Nalbach and Reynolds both testified at trial that appellant struck Nalbach in the chest with a closed fist. Although Nalbach indicated that appellant struck him in response to Nalbach removing appellant's left hand out of his pants pocket, and Reynolds testified that appellant struck Nalbach after Reynolds "tapped" appellant on his elbow, both security guards testified that appellant caused physical harm to Nalbach. Additionally, a reasonable trier of fact could find that the act of appellant hitting Nalbach was conduct in which appellant knew would probably cause injury to Nalbach. Columbus City Code 2301.22(B); see, also, State v. Hill, 2nd Dist. No. 20678,2005-Ohio-3701 at ¶ 9.
 {¶ 26} Viewing the evidence in a light most favorable to the prosecution, the evidence adduced at trial provided a sufficient basis upon which the trial court, as the finder of fact, could reasonably conclude that appellant knowingly caused injury to Nalbach. Therefore, we determine that appellant's conviction for assault was supported by sufficient evidence.
 {¶ 27} With respect to appellant's argument regarding sufficiency of the conviction for criminal trespass, appellant asserts that the prosecution did not establish whether appellant was without privilege to enter or remain on hospital property, whether appellant recklessly entered or remained on the property, and whether the security guards had the proper agency and power to order appellant to leave the property.
 {¶ 28} The complaint charging appellant with criminal trespass states in relevant part, "defendant, at Franklin County/Columbus, Ohio, on or about the 16 day of October, 2004, did: without privilege, recklessly enter or remain on the land or premises, to wit: 793 W. State St. Columbus, Oh 43222, Mount Carmel West Hospital, of another; to wit: Mount Carmel West Hospital, where notice against unauthorized access or presence was actually communicated to him or was communicated in a manner prescribed by law. To Wit: Defendant was given a verbal Trespass Warning and stated he understood. in violation of section 2311.21
City Code, a Misdemeanor of the M-4 [fourth] degree." (Sic.) Because the charging document alleges a violation of Columbus City Code 2311.21(A)(3), we will consider appellant's third assignment of error pursuant to that section.
 {¶ 29} Columbus City Code 2311.21(A)(3) states in relevant part:
(A) No person, without privilege to do so, shall do any of the following:
* * *
(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender.
* * *
 {¶ 30} The Columbus City Code defines privilege as "an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity." Columbus City Code 2301.01(L). Additionally, the Columbus City Code states, "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." Columbus City Code 2301.22(C).
 {¶ 31} The testimony at trial established that, according to Reynolds, the duties of the security guards included enforcing the rules and regulations of the hospital. Additionally, Nalbach testified that the duties of the security guards included "[p]atrolling for visitor safety, employee safety, patient safety, to make sure that everybody is okay." (Tr. 7.) As part of these duties, Nalbach stated that the security guards helped "people in the ER needing assistance, suspicious persons on the ground, on the property, [and] inside the hospital." Id. In addition, Nalbach testified that the hospital was a private facility. The security guards were identified with uniforms, as well as picture identification badges and name tags. Both Nalbach and Reynolds testified that they ordered appellant to leave the hospital property several times, and Nalbach specifically told appellant that if he did not have any business at the hospital, he was required to leave. Nalbach testified that after looking at appellant's veteran's card, he returned it to appellant.
 {¶ 32} Viewing the evidence in a light most favorable to the prosecution, the evidence adduced at trial provided a sufficient basis upon which the trier of fact could reasonably conclude that appellant criminally trespassed on hospital property pursuant to Columbus City Code 2311.21(A)(3). A trier of fact is entitled to determine the existence of circumstances under which a privilege may be revoked. Akron v. Niepsuj, 9th Dist. No. 21369,2003-Ohio-6581 at ¶ 27, citing Euclid v. Moore (Dec. 9, 1999), 8th Dist. No. 75143, appeal not allowed, (2000),88 Ohio St.3d 148. Even assuming that appellant had privilege to enter the hospital property because he had entered the property before, there was evidence that the privilege to remain on the property was properly revoked when the hospital security guards, as employees of the hospital, ordered him to leave the private hospital property. Niepsuj at ¶ 27. Evidence was submitted that supports that actual communication was given to appellant both when he was notified that he was not permitted to remain on the hospital property unless he had business at the hospital, and when he was actually ordered to leave the premises. State v.Thomas, 7th Dist. No. 01C-A-100, 2003-Ohio-4004 at ¶ 15 (verbal notice sufficient actual communication). Consequently, a reasonable trier of fact could find that appellant's action was reckless because he was made aware that he was no longer permitted to remain on the hospital's property by the security guards and therefore knew that his continued presence on the hospital's property would likely risk trespassing. Appellant disregarded that risk and was indifferent to the consequences by remaining on the property even after being ordered to leave several times. See State v. Thomas (Aug. 9, 1995), 9th
Dist. No. 95 CA 22 (appellant recklessly remained on premises after having been personally told continued presence was unauthorized); see, also, State v. MacDonald (Mar. 6, 1991), 9th Dist. No. 14822 (appellant was reckless because he persisted in remaining in barred areas despite receiving warnings from security guards). Accordingly, we determine that appellant's conviction for criminal trespass was sufficiently supported by the evidence.
 {¶ 33} Appellant has additionally asserted that his convictions for assault and criminal trespass are against the manifest weight of the evidence. Even though a conviction may be supported by sufficient evidence, it may still be reversed as being against the manifest weight of the evidence. Thompkins,
supra, at 387. In reviewing a manifest weight challenge, the court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. See, also, Columbus v.Henry (1995), 105 Ohio App.3d 545, 547-548, 664 N.E.2d 622. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 34} Additionally, while a trier of fact may note any inconsistencies and resolve or discount them accordingly, such inconsistencies do not render a conviction against the manifest weight of the evidence. State v. Nivens (May 28, 1996), 10th Dist. No. 95AP1-236, citing State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Thus, it is within the province of the trier of fact to make determinations with respect to credibility. See State v. Lakes (1964),120 Ohio App. 213, 217, 201 N.E.2d 809 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). See, also, State v. Harris (1991),73 Ohio App.3d 57, 63, 596 N.E.2d 563 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against manifest weight). Nevertheless, determinations of credibility and weight of testimony remain within the province of the trier of fact.DeHass, supra, paragraph one of the syallabus; see, also,State v. Colvin, 10th Dist. No. 04AP-421, 2005-Ohio-1448 at ¶ 34. Therefore, "an appellate court may not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is manifestly clear that the fact finder lost its way." State v. Dillion, 10th Dist. No. 04AP-1211,2005-Ohio-4124 at ¶ 21, discretionary appeal not allowed (2006),108 Ohio St.3d 1414, 2006-Ohio-179.
 {¶ 35} In support of his argument that his conviction for assault was against the manifest weight of the evidence, appellant contends that appellee's witnesses lacked credibility. Specifically, appellant asserts that the testimony of Nalbach and Reynolds is questionable because the witnesses had motives to lie to protect themselves. Additionally, appellant argues that there is no independent corroboration of the witnesses' version of events where such corroboration is expected.
 {¶ 36} Pursuant to State v. Farmer (1951),156 Ohio St. 214, appellant asserts that because the prosecution did not present independent evidence corroborating the security guards' version of the incident, the security guards' testimony lacks credibility. Appellant asserts that other independent witnesses should have been available because the incident occurred in front of the main entrance to the hospital. Finally, appellant asserts that the prosecution should have presented the video of the closed circuit television of appellant as viewed by the security guards in the hospital security center.
 {¶ 37} Under Farmer, a failure by the prosecution to produce evidence which should be readily available may raise doubt to an essential element of an offense only when an element of the prosecution's case is solely based on circumstantial evidence. Farmer, supra, at paragraph four of the syllabus. In the instant case, the prosecution presented direct evidence via the testimony of Nalbach and Reynolds as to all of the essential elements regarding the charge for assault. As the case before us is not a circumstantial evidence case, we find Farmer
inapplicable. Appellant's assertion that the testimony of the security guards lacks credibility, we note that it is well within the province of the trier of fact to make determinations regarding the credibility of witnesses. Lakes, supra, at 217.
 {¶ 38} We do note that the record indicates that the testimony of Nalbach and Reynolds is inconsistent with respect to which security guard first touched appellant. However, they both testified that appellant struck Nalbach. Appellant directly disputed the prosecution's version of events by testifying that he did not strike Nalbach. It was within the province of the trial court, as the trier of fact, to resolve any inconsistencies between the version of events given by Nalbach, Reynolds, and appellant, and determine where the truth lies between these conflicting statements of the events. Nivens, supra; see, also,Lakes, supra, at 217. The trial court had the opportunity to determine the credibility of Nalbach and Reynolds.
 {¶ 39} Based on the record before us, and after weighing all of the evidence presented at trial, and considering all reasonable inferences, as well as the credibility of the witnesses, we find that the trial court did not lose its way so as to create a miscarriage of justice in finding appellant guilty of assault. Thompkins, supra, at 387. Accordingly, appellant's conviction for assault was not against the manifest weight of the evidence.
 {¶ 40} Appellant also asserts his conviction for criminal trespass is against the manifest weight of the evidence. In support of his argument, appellant asserts that the security guards refused to return his veteran's card to him, and therefore he was not free to leave without his identification. Additionally, appellant asserts that he attempted to leave the premises without his identification, but that the security guards blocked him.
 {¶ 41} Appellant's argument therefore is directed towards the credibility of the security guards. Nalbach testified that he returned the veteran's card to appellant after looking at it. Both Nalbach and Reynolds testified that appellant could have left the property, and that they were both ordering appellant to leave the hospital property. Determinations of weight and credibility are within the province of the finder of fact.Thomas, 70 Ohio St.2d at 80. The trial court, as the trier of fact, was free to believe all, part, or none of the testimony of each witness. Colvin, supra, at ¶ 34. Here, the trial court had the opportunity to determine the credibility of Nalbach and Reynolds with respect to whether appellant's identification was returned, and whether he was in fact able to leave the hospital premises.
 {¶ 42} Based on the record before us, and after weighing all of the evidence presented at trial, and considering all reasonable inferences, as well as the credibility of the witnesses, we find that the trial court did not lose its way so as to create a miscarriage of justice in determining that appellant was guilty of criminal trespass. Thompkins, supra, at 387. Appellant's conviction for criminal trespass was therefore not against the manifest weight of the evidence.
 {¶ 43} As we have determined that appellant's conviction for assault and criminal trespass were supported by sufficient evidence and were not against the manifest weight of the evidence, appellant's first and third assignments of error are overruled.
 {¶ 44} We next turn to appellant's second assignment of error. Therein, appellant asserts that the trial court erred in convicting appellant for assault because Nalbach and Reynolds each testified that they individually touched appellant before appellant struck Nalbach and therefore appellant was entitled to respond with force to the use of force by Nalbach and Reynolds. Essentially, appellant is asserting that Nalbach and Reynolds unlawfully assaulted him, he is therefore entitled to defend himself.
 {¶ 45} The defense of self-defense is affirmative in nature. Thus, in order to prevail on a self-defense claim, a defendant must prove the elements of the defense by a preponderance of the evidence. State v. New, 10th Dist. No. 05AP-262, 2005-Ohio-6471 at ¶ 9. Consequently, "the defendant must prove: (1) that he was not at fault in creating the violent situation; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm; and (3) that his only means of escape was the use of force." Id., citing State v. Thomas
(1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339.
 {¶ 46} The Supreme Court of Ohio elaborated on the nature of the defense of self-defense under Ohio law in State v. Martin
(1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166, stating:
This court, in State v. Poole (1973), 33 Ohio St.2d 18, 19, [62 O.O.2d 340], characterized the defense of self-defense as a "justification for admitted conduct." Self-defense represents more than a "denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged * * *." Id. Rather, we stated in Poole, thisdefense admits the facts claimed by the prosecution and thenrelies on independent facts or circumstances which the defendantclaims exempt him from liability. Id. Thus, the burden of proving self-defense by a preponderance of the evidence does not require the defendant to prove his innocence by disproving an element of the offense with which he is charged. The elements of the crime and the existence of self-defense are separate issues. Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged.
Id. at 94. (Emphasis added.) State v. Martin (1986),21 Ohio St.3d 91, 94, 488 N.E.2d 166, 21 Ohio B. Rep. 386.
 {¶ 47} In the instant case, the appellant testified on his own behalf at trial, and denied striking Nalbach. On appeal, appellant asserts, notwithstanding his denial at trial, that if he did in fact strike Nalbach, his action was justified because he was first touched by the security guards and the security guards had no legal authority to touch him. Although appellant asserts that it is not legally inconsistent for an appellant to deny committing assault and also assert the defense of self-defense, appellant has cited no authority in support of this proposition.
 {¶ 48} Appellant is asserting that there are independent facts or circumstances that exempt him from liability because either Nalbach or Reynolds touched him first. Because appellant unequivocally denied striking Nalbach by testifying at trial, appellant cannot assert self-defense because self-defense effectively admits the facts asserted by the prosecution.Martin, supra, at 94. To hold both positions is "logically and legally inconsistent," because "[a]ppellant cannot claim absolute innocence and simultaneously avail himself of an affirmative defense" of self-defense. State v. Powell (Sept. 29, 1997), 4th Dist. No. 96CA257, citing Poole, supra, (defendant testified at trial denying firing a weapon thereby precluding a jury instruction for self-defense); see, also, State v.Kajoshaj (Aug. 10, 2000), 8th Dist. No. 76857 (defendant testified at trial denying using force in an altercation therefore not entitled to self-defense instruction); State v.Perry, 5th Dist. No. 02-CA-77, 2003-Ohio-6097, at ¶ 27 (trial court did not commit error by failing to give instruction on self-defense because husband denied hitting wife); State v.Van Wall (Aug. 21, 1973), 10th Dist. No. 73AP-115 (defendant testified denying killing victim, trial court need not charge on self-defense), citing State v. Armstrong (Oct. 14, 1969), 10th Dist. No. 9406 (denial of participation in prison riot by defendant bars assertion of defense of excuse or justification). Because appellant denied striking Nalbach in his direct testimony, he cannot assert on appeal an error that the trial court failed to consider self-defense in rendering its verdict for assault. See Powell, supra.
 {¶ 49} We therefore overrule appellant's second assignment of error.
 {¶ 50} Having overruled appellant's three assignments of error, the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
Klatt, P.J., and French, J., concur.