[Cite as *State v. Dieker*, 2022-Ohio-1260.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29242 |
| | : | |
| v. | : | Trial Court Case No. 2021-CRB-1813 |
| | : | |
| TONYA M. DIEKER | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of April, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 & ANDREW D. SEXTON, Atty. Reg. No. 0070892, Assistant Prosecuting Attorneys, City of Dayton Prosecutor's Office, Appellate Division, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington Court House, Ohio 43160
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Tonya M. Dieker appeals from her conviction for criminal trespass.

I.       Facts and Course of Proceedings

{¶ 2} Elaine Lark, Dayton Police Officer Kenneth Webster, and Dieker testified regarding what happened on the evening of May 28, 2021, at the St. Vincent de Paul Gateway Woman and Family Shelter ("the Shelter") located on West Apple Street in Dayton.   Around 8:00 p.m., Dieker arrived at the Shelter with her dog.   Trial Transcript (August 10, 2021) ("Tr."), 7-8, 32-33.   Elaine Lark, who was the second shift supervisor at the Shelter, began her shift that night at 9:00 p.m.   Upon arriving for her shift, Lark was informed by the first shift supervisor that Dieker was at the Shelter and had her dog with her.   *Id.* at 7.   This was an issue because Dieker had been informed in December 2020 that she was not allowed to bring her dog with her to the Shelter due to a dog bite incident.   *Id.* at 33-34.

{¶ 3} According to Lark, she approached Dieker on the evening of May 28th and asked her over ten times to remove her dog from the premises, but Dieker refused.   *Id.* at 9-10.   Dieker testified, however, that she never spoke to Lark on the night of the 28th and that Lark was not even at the Shelter that evening.   *Id.* at 40.   Lark testified that she called the Dayton Police Department after Dieker repeatedly refused to leave the Shelter. *Id.* at 11.   Dayton Police Officer Webster arrived at the Shelter shortly after 9:00 p.m. *Id.* at 19-20.   He testified that he first had a conversation with Lark about why he had been dispatched there.   Officer Webster then asked Dieker multiple times to leave the

Shelter. But she refused and claimed that she was the owner of the Shelter. Officer Webster then handcuffed Dieker and took her and her dog to his police cruiser. At that time, Officer Webster discussed Dieker's options with her and attempted to find solutions other than taking her to jail. For example, Officer Webster offered to drive Dieker to her parent's house in Vandalia. They also discussed Dieker's calling her sister to come pick up the dog. But Dieker made it clear that she would just return to the Shelter with the dog as soon as she could. Consequently, Officer Webster took Dieker to the police station and she ultimately went to jail. *Id.* at 20-26.

**{¶ 4}** Dieker was charged with criminal trespass, a fourth degree misdemeanor, in violation of R.C. 2911.21(A)(4). During an August 10, 2021 bench trial, she filed a Crim.R. 29 motion for acquittal at the end of the State's case, which the court overruled. After the presentation of all the evidence, the trial court found Dieker guilty of criminal trespass and sentenced her to 30 days in jail. The court credited her with eight days served in jail and suspended the remaining 22 days on the condition of good behavior, which included a requirement that she could only return to the Shelter if she did not have her dog with her. The court stated that the fine and court costs also would be suspended. Tr. 50-52. On August 19, 2021, the court filed a Nunc Pro Tunc Sentencing Entry memorializing its August 10th oral ruling. However, the docket entries state that, contrary to the trial court's oral and written pronouncements, $70 of court costs were in fact paid out of the $154 bail deposit Dieker had made. Dieker timely filed a notice of appeal from her conviction.

II.      Dieker's Appeal Is Not Moot

{¶ 5} Initially, the State of Ohio contends that we should not consider Dieker's assignments of error, because Dieker "lacks a 'legally cognizable interest in the outcome' thereby rendering the appeal moot."   Brief of Appellee, p. 4, quoting *State v. Cohen*, 2d Dist. Montgomery No. 28660, 2020-Ohio-5270, ¶ 4-6.   According to the State, Dieker served her sentence voluntarily, no fine or probation was imposed, court costs were waived, and Dieker failed to argue any collateral disability resulting from her criminal trespass conviction.   Brief of Appellee, p. 5.

{¶ 6} Dieker responds that her appeal is not moot, because: 1) the suspension of her remaining jail time was on the condition that she did not return to the Shelter with her service dog; 2) the eight days of jail time involuntarily served precluded a mootness finding; 3) the court costs were not actually waived and were paid from a partial refund of Dieker's bail deposit; 4) she is suffering a collateral legal disability by not being able to use her service dog at the Shelter; 5) she has suffered a violation and loss of her civil rights; and 6) her appeal involves a matter of public or great interest.   Reply Brief of Appellant, p. 4-5.

{¶ 7} When a defendant convicted of a misdemeanor offense voluntarily satisfies the imposed judgment, an appeal of the conviction is moot unless the judgment was served involuntarily or the "defendant * * * offer[s] evidence from which an inference can be drawn that * * * he will suffer some collateral legal disability or loss of civil rights stemming from [the] conviction."   *State v. Golston*, 71 Ohio St.3d 224, 226, 643 N.E.2d 109 (1994).   In *Cleveland Heights v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953

N.E.2d 278, the Supreme Court examined whether an appeal is rendered moot when a misdemeanor defendant serves or satisfies his sentence. The *Lewis* Court explained that in determining whether an appeal is moot, courts should consider whether the misdemeanant 1) contested the charges at trial; 2) sought a stay of execution of the sentence for the purpose of preventing an intended appeal from being declared moot; and 3) appealed the conviction. *Id.* at ¶ 23.

{¶ 8} Here, Dieker involuntarily served eight days in jail, contested the criminal trespass charge at trial, and appealed her conviction. At the close of trial, the judge ruled that the remaining days of her 30-day sentence and both her fine and court costs would be suspended. It turns out, however, that Dieker was forced to pay court costs, contrary to both the trial court's oral ruling and written sentencing entry. A review of the docket shows that court costs were paid out of Dieker's bail deposit and then the remainder of the deposit was returned to Dieker. We cannot conclude that Dieker should have filed a stay to prevent this from happening, since there was no way for her to know that this was going to happen. Rather, Dieker did everything she was expected to do to preserve her right to have her conviction reviewed by this Court. Further, the condition that Dieker cannot take her dog with her to the Shelter arguably constitutes a collateral legal disability.

{¶ 9} Based on a review of the record before us, we conclude that Dieker's appeal is not moot. Therefore, we will address Dieker's two assignments of error.

III.   The State Presented Sufficient Evidence To Establish Each Element of The Offense of Criminal Trespass

{¶ 10} Dieker's first assignment of error states

THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S CRIM.R. 29 MOTION AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO FIND GUILT BEYOND A REASONABLE DOUBT IN VIOLATION OF HER RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 11} } Dieker contends that the trial court erred in overruling her Crim.R. 29 motion. Crim.R. 29(A) provides, in part: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." A Crim.R. 29 motion challenges the legal sufficiency of the evidence. *State v. Haggerty*, 2d Dist. Montgomery No. 24405, 2011-Ohio-6705, ¶ 19. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12} Dieker was charged with criminal trespass in violation of R.C. 2911.21(A)(4), which provides that "[n]o person, without privilege to do so, shall do any of the following: * * * (4) Being on the land or premises of another, negligently fail or

refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either."  R.C. 2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."  A privilege, once granted, can be revoked. *City of Columbus v. Peoples*, 10th Dist. Franklin No. 05AP-247, 2006-Ohio-1718, ¶ 32.

{¶ 13} Dieker was asked several times by an authorized representative of the Shelter and by a police officer to remove her dog from the premises.  Specifically, Lark testified as follows regarding her attempts to get Dieker to leave the Shelter:

Q:    Tell me about the contact if you would?

A:    When I came on shift, I just blatantly asked her, "Miss Dieker, you know you can't have the dog on the premises.  I'm going to have to ask you to leave." I pretty much did that throughout the whole night.  I tried to give chances."

Tr. 9.

{¶ 14}   Similarly, Officer Webster testified as follows regarding his attempts to get Dieker to leave the property voluntarily:

A:    Yes, sir.  I explained to Miss Dieker that shelter staff had requested that she leave the premises or her dog leave the premises.

Q:    And how did she respond when you told her that?

A:    She was not agreeable.

Q:    Did you specifically ask her to leave with the dog?

A:    Yes.

Tr. 21.

{¶ 15} Dieker conceded that she was informed more than five months earlier in December 2020 that her dog was no longer allowed on the Shelter's premises due to an alleged biting incident. The testimony establishes that Dieker was notified by the agent of the Shelter and by a police officer to leave the premises, and she refused to leave. Any permission Dieker may have previously had to be at the Shelter with her dog was revoked in December 2020, and this fact was reiterated to Dieker several times on the night of May 28, 2021. Consequently, the State presented sufficient evidence on each element of the offense of criminal trespass. R.C. 2911.21(A)(4).

{¶ 16} Dieker contends that the trial court erred in overruling her Crim.R. 29 motion, because R.C. 4112.02(G) precludes the Shelter from trespassing her from the Shelter's premises. Dieker did not raise R.C. 4112.02 before the trial court, and we will not consider that argument here. Rather, Dieker centered her Crim.R. 29 motion around the contention that there was no trespass, because Dieker was allowed to return to the Shelter once she removed her dog from the Shelter. According to counsel for Dieker, "her refusing to follow the rules is what participated [sic] her arrest not an actual trespass." Tr. 30. Dieker refused to follow the rules of the Shelter, was previously informed that her dog was not allowed at the Shelter, and was asked to leave several times, but refused to do so. Contrary to Dieker's argument, mere presence is not a defense to criminal trespass as presence upon the property of another without permission constitutes a crime. *State v. Filkens*, 11th Dist. Lake No. 88-L-13-134, 1989 WL 140155, *2 (Nov. 17, 1989).

{¶ 17} Dieker's first assignment of error is overruled.

**IV.    Dieker's Conviction Was Not Against The Manifest Weight of the Evidence**

**{¶ 18}** Dieker's second assignment of error states

THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

**{¶ 19}** A weight-of-the-evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Jones*, 2d Dist. Montgomery No. 28179, 2019-Ohio-2940, ¶ 13, quoting *State v. Wilson*, 2d Dist. Montgomery No. 2258, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 20}** Dieker contends that the manifest weight of the evidence established that her "service dog had not been proven to have bitten anyone." Brief of Appellant, p. 11. Dieker testified that in December 2020, someone alleged that her dog had bitten

someone. She conceded that the woman who made the allegation had one dog bite. Tr. 42. Further, she was told at that time by a representative of the Shelter that her dog could not be on the Shelter's property. *Id.* at 33-34. Upon the record before us, we cannot find that it was unreasonable for the Shelter to preclude Dieker from bringing her dog to the Shelter after the alleged dog biting incident.

{¶ 21} Dieker also contends in this assignment of error that R.C. 4112.02's prohibition against unlawful discriminatory practices applied to her situation. But as we noted above, Dieker failed to raise this argument at trial and we will not consider it here.

{¶ 22} The second assignment of error is overruled.


V.      Conclusion

{¶ 23} Having overruled both of Dieker's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


TUCKER, P. J. and WELBAUM, J., concur.


Copies sent to:

Stephanie L. Cook
Andrew D. Sexton
Steven H. Eckstein
Hon. Daniel G. Gehres